**Gene A. BERRY, Ronnie Baker, Frank Oddo, Mylies Curl, Beverly Alery, Virgil Wright, Parties immediately above acting as Trustees of the Service Employees Union Local 96 Building Service Employees Insurance Welfare Fund (Window Cleaners Division), Appellants,**

v.

**Paul GARZA d/b/a WindowMasters, Appellee.**

No. 90–1651.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1990.

Decided Nov. 15, 1990.

Gardiner B. Davis, Kansas City, Mo., for appellants.

Robert J. Janowitz, Kansas City, Mo., for appellee.

Before LAY, Chief Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

LAY, Chief Judge.

The Trustees of the Building Service Employees Insurance Welfare Fund ("Fund") brought this action pursuant to sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145 (1989), to recover from Paul Garza delinquent contributions owed the Fund under a collective bargaining agreement. Garza asserted that the collective bargaining agreement was void because of lack of majority representation. The district court granted summary judgment in favor of Garza. 734 F.Supp. 411. On appeal we hold that Garza's obligation is enforceable under section 515 of ERISA and that Garza is estopped from challenging the validity of the bargaining agreement. We reverse.

BACKGROUND

Paul Garza is the sole proprietor of WindowMasters, a window cleaning business for residential and commercial buildings in Kansas City, Missouri. WindowMasters employed five full-time employees in December, 1987.

Garza wanted WindowMasters to become a unionized company so he could commence a commercial windowcleaning job for a unionized janitorial service company and submit bids for other union work. Consequently, on December 2, 1987, Garza met with Gene Berry, the Secretary–Treasurer of the Service Employees International Union Local 96 Building Service Employees ("Union"), to discuss the possibility of unionizing WindowMasters. Garza and Berry proceeded to enter into an oral agreement to make WindowMasters a unionized company. Berry informed Garza that under the terms of the collective bargaining agreement, the employees of WindowMasters had to become members of the Union as a condition to their continued employment. He then requested Garza to have each employee sign a union membership application card.

Pursuant to Garza's request, two WindowMasters employees signed union membership application cards in early December, 1987; however, the other three employees never signed cards. On December 4, 1987, Garza signed a membership application card and returned the three signed cards to Berry's office. While at Berry's office, Garza signed a collective bargaining agreement dated April 1, 1986. The agreement stated it would "remain in full force and effect through October 1, 1987, and

from year to year thereafter" unless either party terminated or amended the agreement on September 30, 1987, or gave written notice to the other party sixty days before the end of any yearly period thereafter.[1] On December 4, 1987, Garza signed an addendum which is the source of the present litigation. The addendum provides:

> I [Paul Garza], acknowledge the fact that this contract is expired and will continue to comply with the contractual language and am fully aware of the new changes to the Health and Welfare contributions and will abide by them until the new contract is completed.

Garza made no contributions to the Fund on his employees' behalf and performed only one union job.

Under section 7 of the National Labor Relations Act ("NLRA"), employees have the right to "bargain collectively through representatives of their own choosing" or "to refrain" from such activity. 29 U.S.C. § 157 (1989). Sections 8(a)(1) and 8(b)(1)(A) of the NLRA provide that an employer and a union, respectively, may not interfere with, restrain, or coerce employees in the exercise of their section 7 rights. 29 U.S.C. § 158 (1989). Section 9(a) of the NLRA provides that employees will have freedom of choice and majority rule in their selection of a bargaining representative. 29 U.S.C. § 159 (1989). The district court found the collective bargaining agreement to be unenforceable because the Union did not have majority status when the agreement was executed (only two of the five windowcleaning employees signed a union membership application card). *See International Ladies' Garment Workers Union v. NLRA*, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961) (holding that a collective bargaining agreement between an employer and a union is void if a majority of the employees did not select a bargaining representative before the agreement was executed).

## DISCUSSION

In 1980, Congress amended ERISA by adding section 515 which provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145 (1989). After reviewing the legislative history of ERISA section 515, the Second Circuit held in *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir.1990), *petition for cert. filed*, 59 U.S.L.W. 3278 (U.S. Sept. 26, 1990) (No. 90–527), that an employer may not defeat an action for contributions due an employee benefit fund by raising as a defense either lack of majority status or abandonment of contracts. *See also Central States, S.E. & S.W. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148 (7th Cir.1989) (recognizing that ERISA does not make the obligation to contribute to a pension plan depend on the existence of a valid collective bargaining agreement). The *Benson* court noted that Congress added section 515 to ERISA "to 'permit trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise un-

---

1. The facts in the present case are distinguishable from the facts in *Laborers Health & Welfare Trust Fund for N. California v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988). In *Advanced Lightweight*, a company that was a party to two multi-employer collective bargaining agreements notified the respective unions well in advance that it would cease contributing to the funds once the agreements expired. When the company failed to make contributions beyond the expiration date set forth in the agreements, trustees of the multi-employer plan brought suit against the company to recover postcontract contributions under section 515 of ERISA. The Supreme Court held in favor of the company on the ground that an employer's liability under section 515 of ERISA is limited to the effective period of the collective bargaining agreement. *Id.* at 548–49, 108 S.Ct. at 835–36. Unlike *Advanced Lightweight*, the Fund was not attempting to hold Garza liable for contributions that he never promised to make. Garza voluntarily executed an addendum to the agreement in which he specifically agreed to abide by the terms of the expired contract until a new contract was completed. Nor does the record show that Garza has ever attempted to exercise his contractual right to terminate the agreement by giving the Union appropriate notice.

der labor-management relations law—other than 29 U.S.C. 186.' " *Id.* (quoting 126 Cong.Rec. 23,039 (1980) (remarks by Representative Thompson)). In addition, the court recognized that "an employer [who] knowingly signs an agreement that requires him to contribute to an employee benefit plan ... may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole." *Id.*

■ In the present case, the district court held the agreement between Garza and the Union to be unenforceable because the Union did not have majority status at the time the agreement was executed. We disagree based on the holding in *Benson.* Because Garza knowingly entered into a facially valid collective bargaining agreement with the Union, he is now estopped from raising the defense of lack of majority status to avoid his obligation to the Fund. The district court's reliance on *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982), is misplaced. In *Kaiser Steel*, trustees of the United Mine Workers of America Health and Retirement Funds ("UMW") sued a coal producer for failing to contribute to the union based on the coal it purchased from other producers as required under a collective bargaining agreement. The Supreme Court held that the coal producer was entitled to plead and have adjudicated its defense that the purchased-coal clause was illegal in that it violated the Sherman Act and the NLRA. The *Kaiser Steel* Court noted that the agreement "command[ed] conduct that assertedly renders the promise an illegal undertaking under the federal statutes." *Id.* at 79, 102 S.Ct. at 857. In addition, the Court recognized that the coal company "did not make a naked promise to pay money to the union funds" but rather agreed to pay contributions only if it purchased coal from other employers who were not under contract with the union. *Id.* Unlike *Kaiser Steel*, the collective bargaining agreement in the present case does not provide for the commission of allegedly unlawful acts. Fur-

thermore, Garza knowingly made a "naked promise" to contribute to the Union so he could obtain union work.

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In the present case the uncontroverted facts establish that Garza knowingly and voluntarily signed a collective bargaining agreement with the Union. Because Garza failed to make any contributions to the Fund as required by the collective bargaining agreement, we conclude that the district court erred by granting summary judgment in his favor.

Reversed and remanded.[2]

**2.** In light of our holding, we need not reach the issue as to whether 29 U.S.C. § 160(b) (1989)

would bar the defendant from raising the defense of lack of majority representation.