John **AGATHOS** and Leonard Demarsico, as Trustees of the Local 4–69 Welfare Fund and the Local 4–69 Pension Fund, and Local 69, Hotel Employees and Restaurant Employees International Union, by its President, John Agathos, Appellants,

v.

**STARLITE MOTEL.**

No. 92–5022.

United States Court of Appeals, Third Circuit.

Argued Aug. 19, 1992.

Decided Oct. 28, 1992.

John A. Craner (argued), Craner, Nelson, Satkin & Scheer, P.A., Scotch Plains, N.J., for appellee.

Larry M. Cole (argued), Patricia Nichols, Cole & Cole, Jersey City, N.J., for appellants.

Before: HUTCHINSON, COWEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

Plaintiff trustees of the jointly-administered Local 4–69 Welfare Fund and the Local 4–69 Pension Fund ("Funds") brought this action pursuant to section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145 (1988), claiming entitlement to welfare and pension fund contributions for unreported employees of defendant Starlite Motel ("Starlite"). The Funds also sought reimbursement for medical claims paid to a former Starlite employee who was ineligible to receive payments. Plaintiff Local 69, Hotel Employees International Union ("Union") brought this action under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1988), seeking membership dues for Starlite's unreported employees, all of whom were non-union. The district court decided to leave the parties as it found them, and entered judgment in favor of Starlite.

We will vacate the district court's judgment and remand for further proceedings consistent with this opinion.

## I.

On the eve of trial before the district court, the parties stipulated to what they perceived as the relevant facts and agreed that only legal conclusions remained. The stipulated facts are as follows:

> From and after May, 1979, and through the present time, defendant Starlite Motel ("Starlite") has been owned and operated as a motel in Jersey City, New Jersey, by Henry and Irene Dabrowski. Dabrowski's testimony is that shortly after the Dabrowski's [sic] assumed ownership of Starlite, two men identifying themselves as representatives of the Hotel & Restaurant Employees and Bartenders Union Local 4 sought to have him recognize the Union and sign a collective bargaining agreement with the local Union. Dabrowski initially refused. Several meetings occurred thereafter. The Local 4 representatives never proved to Dabrowski that they represented a majority of the employees at Starlite. They did tell Dabrowski that picketing would occur unless he signed an agreement. Dabrowski thereupon agreed to recognize the Union. He states that he then agreed with the Union representatives to report that he employed only two employees. He states that the Union representatives agreed to this limitation. After the subsequent merger of Local 4 into Local 69, no former Local 4 personnel are available. Thus Local 69 has no testimonial evidence on this point to confirm or refute Dabrowski's testimony.

> Shortly thereafter under date of May 31, 1979 Dabrowski, for Starlite, entered into a

collective bargaining agreement with Local 4. The agreement recognized the Union and covered '*all* workers employed by the Employer in crafts covered by this agreement' (i.e. maids and housekeepers) (emphasis supplied).

The agreement contained a self-renewal provision in Article XXI which provided that the agreement shall 'be automatically renewed for a period of one year from such date and from year to year thereafter, unless either party notifies the other by registered mail at least thirty (30) days before termination of this agreement or renewal hereof that changes are to be negotiated.' No notice of change was ever given by either party. No new contract was ever negotiated either by Local 4 or by Local 69 after the merger. The Union contends that the agreement self-renewed during all pertinent periods and is currently in effect. The Employer contests this.

The agreement also provided that defendant Starlite contribute to plaintiff Health and Pension Funds ("Funds") on behalf of each 'steady' bargaining unit employees [sic], employed by Starlite Motel, and remit initiation fees and monthly dues, withheld from Union members' pays [sic], to plaintiff Union. The agreement also provided that defendant would employ only maids and housekeepers who were members in good standing of the Union.

Defendant employed up to ten employees at any one time from 1979 to 1989. Nevertheless, defendant made contributions to the Funds on behalf of only two individuals, Zuzanna Podkowa and Elizabeth Matuszcak. Starlite also submitted dues payments supposedly deducted from these two employees' wages. This procedure was continued even after both women left the employ of Starlite. Defendant's reports to the Union and Funds simply showed Podkowa and Matuszcak as continuing in employment and did not show any deletions or additions. Other non-union members were employed throughout this period without notice or payment to the Union or Funds.

On January 30, 1983 Local 4 merged with plaintiff Local 69. The benefit funds were merged at the same time and became the Local 4–69 Welfare and Pension Funds.

Defendant initially made its fund contribution for the two employees based upon the contract rate of $23.00 per month. Thereafter from time to time defendant increased the contribution rates to the same rate as the Local had negotiated with the local Motel Association. Defendant was not a member of the local Motel Association. Defendant's owner maintained that these increases were paid after discussion with Union representatives who visited the motel from time to time. Monthly billing sheets reflecting these increased rates were sent by the Funds to Starlite.

Zuzanna Podkowa left defendant's employ on June 30, 1986. After leaving defendant's employ, Mrs. Podkowa filed medical claims with the Fund. Fund records, based on the employer contributions, showed Mrs. Podkowa was still employed by defendant. Since contributions were current, she was considered eligible and the claims in the amount of $11,203.67 were paid. Zuzanna Podkowa would not have been eligible for coverage if her true employment status were known.

Because of information disclosed in Mrs. Podkowa's subsequent claims, Local 69 and the Funds sought audit of defendant's books. This was refused. Defendant thereupon stopped payment of dues and Fund contributions. Suit was instituted. Subsequent audit for the period from January, 1984 through December 31, 1990 conducted during discovery showed that:

| | |
|---|---|
| Welfare contributions due were: | $52,665.00 |
| Pension contributions due were: | $14,756.00 |
| Due[s] payable were: | $11,825.00 |
| Sub totalling: | $79,246.00 |
| Less amount received: | ( 1,730.00) |
| Total amount due: | $77,516.00 |

All of the foregoing are computed without interest, liquidated damages or attorneys fees.

*District Court Memorandum* at 2–4, App. at 177–79.

Without taking further evidence, the court heard legal arguments on the stipulated facts. Starlite argued that the collective bargaining agreement was invalid because it was induced by a threat to picket and because the Union did not represent a majority of Starlite's employees at the time the agreement was executed. According to Starlite, neither the Union nor the Funds could enforce the invalid agreement. The Union and the Funds argued that the agreement was valid when executed and continued in force from year to year in accordance with the renewal provisions.

The district court concluded that the circumstances of this case made it appropriate to leave the parties "as they are." *District Court Memorandum* at 6, App. at 181. On the one hand, the court found that Starlite had operated without complaint under the collective bargaining agreement for more than ten years and had violated several of its provisions. On the other hand, the court concluded that the Funds and the Union had been passive in the extreme and had failed to take any steps to safeguard their rights under the agreement.

The district court also addressed the separate merits of each claim. Although agreeing that neither the threat of picketing nor the Union's lack of majority status could avoid Starlite's obligation to make fund contributions, the court concluded that the Funds suffered no damages. It stated that the unreported employees were never covered—and thus could not have made any claims for benefits—under the welfare plans for which contributions were being sought. Thus, there was no evidence that Starlite's failure to make welfare contributions caused the Funds any financial loss in the form of payments to unreported employees. The district court also found no evidence that the Funds suffered any damages as a result of Starlite's failure to make pension contributions.

The Funds' claim for recovery of medical benefits paid to Mrs. Podkowa after she ceased working for Starlite presented a different question. The court found that the payments to Podkowa were directly occasioned by Starlite's reports and by its periodic payments for Podkowa's coverage, which created the appearance that she continued in Starlite's employ. However, the Funds offered no excuse for doing nothing for more than three years to ascertain the employment status of Podkowa, who submitted claims in excess of $11,000 and indicated on various occasions that she was suffering from a serious illness. Concluding that payments were made to Podkowa as a result of the Funds' failure to conduct even the most minimal policing of Starlite's account, the district court denied recovery.

The district court also rejected the Union's claim for membership dues. Although it found that Starlite breached its contractual obligation to hire only Union members, the court held that union dues for non-union employees were not among the panoply of remedies available for a violation of a collective bargaining agreement. This appeal followed.

## II.

The district court exercised jurisdiction pursuant to ERISA section 502(e), 29 U.S.C. § 1132(e) (1988), and LMRA sections 301, 302(e), 29 U.S.C. §§ 185, 186(e) (1988). We have jurisdiction over plaintiffs' appeal under 28 U.S.C. § 1291 (1988). Our review of the district court's statutory construction and of its application of legal precepts to the stipulated facts is plenary. *Dawson v. United States*, 894 F.2d 70, 72 (3d Cir.1990) (statutory construction); *Dent v. Cunningham*, 786 F.2d 173, 175 (3d Cir.1986) (application of legal precepts). To the extent the district court made disputed factual findings, our standard of review is the "clearly erroneous" standard set forth in Fed.R.Civ.P. 52(a). Factual findings are not clearly erroneous if the record contains sufficient evidence to support them. *See Cooper v. Tard*, 855 F.2d 125, 126 (3d Cir. 1988).

## III.

We first address whether the Funds are entitled to recover welfare and pension contributions on behalf of Starlite's unreported employees.

### A.

We initially consider Starlite's challenges to the formation of the collective bargaining agreement. The Funds are third-party beneficiaries of the collective bargaining agreement between Starlite and the Union. *See Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 773 (9th Cir.1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987). The rights of third-party beneficiaries typically are subject to any defenses that the promisor could assert in a suit by the promisee. J. Calamari & J. Perillo, *The Law of Contracts* § 17–10 (3d ed. 1987). Collective bargaining agreements, however, are not typical third-party beneficiary contracts. *See Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 468–69, 80 S.Ct. 489, 495, 4 L.Ed.2d 442 (1960). In *Lewis*, the Supreme Court held that a union's breach of a collective bargaining agreement could not avoid an employer's obligation to make contributions to a union welfare fund, unless the parties agreed to preserve such a defense in unequivocal words. *Id.* at 470–71, 80 S.Ct. at 495–96.

In 1980, Congress passed section 515 of ERISA, 29 U.S.C. § 1145 (1988), which further limited the defenses available to employers. Section 515 provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

*Id.* Congress enacted section 515 because the cost to plans of employer delinquency "detract[ed] from the ability of plans to formulate or meet funding standards and adversely affect[ed] the financial health of plans" and because "[r]ecourse available under current law for collecting delinquent contributions [was] insufficient and unnecessarily cumbersome and costly." 126 Cong.Rec. 23039 (1980) (remarks of Rep. Thompson). Section 515 was designed to "permit trustees of plans to recover delinquent contributions efficaciously, and with-

out regard to issues which might arise under labor-management relations law—other than 29 U.S.C. 186." *Id.*

Courts of appeals have interpreted section 515 as precluding employers from raising a variety of contract defenses as a means of avoiding the obligation to contribute to employee benefit plans. For example, an employer may not assert defects in the formation of the collective bargaining agreement, such as a lack of majority support for the union, *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 316 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 511, 112 L.Ed.2d 524 (1990); *Berry v. Garza*, 919 F.2d 87, 90 (8th Cir.1990), fraud in the inducement, *Rozay's Transfer*, 791 F.2d at 775, or oral promises to disregard the text of the agreement, *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148, 1151–56 (7th Cir.) (en banc). Nor may an employer assert that the union abandoned the collective bargaining agreement. *Benson*, 907 F.2d at 314–16. Our research has uncovered only three recognized defenses: (1) the pension contributions themselves are illegal, *see Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 86–88, 102 S.Ct. 851, 861–62, 70 L.Ed.2d 833 (1982); (2) the collective bargaining agreement is void *ab initio*, as where there is fraud in the execution, and not merely voidable, as in the case of fraudulent inducement, *Rozay's Transfer*, 791 F.2d at 773–75; *Benson*, 907 F.2d at 314; and (3) the employees have voted to decertify the union as its bargaining representative, thus prospectively voiding the union's collective bargaining agreement. *Sheet Metal Workers' Int'l Ass'n, Local 206 v. West Coast Sheet Metal Co.*, 954 F.2d 1506, 1509–10 (9th Cir.1992).

Starlite argues that the Union's threat to picket coerced it into signing the collective bargaining agreement and that this coercion amounted to "fraud in the execution" of the agreement. To prevail on a defense of fraud in the execution, a party must show "excusable ignorance of the contents of the writing signed." *Rozay's Transfer*, 791 F.2d at 774 (quoting

U.C.C. § 3–305 cmt. 7); *accord* J. Calamari & J. Perillo, *supra,* § 9–22 (party claiming fraud in the execution must show that he "signed an instrument that is radically different from that which [he] is led to believe that he is signing"). Starlite makes no such showing.

Starlite relies on *Operating Engineers Pension Trust v. Gilliam,* 737 F.2d 1501 (9th Cir.1984). In that case, Gilliam sought to become a union member as an owner-operator to obtain a union construction job. Gilliam then signed a short-form collective bargaining agreement, given to him by the union's business agent, under the mistaken impression that he was signing union membership application documents. When the trust funds sued to collect pension contributions pursuant to the agreement, the court held that Gilliam was not liable for contributions, since he justifiably believed that the short-form agreement he executed was an entirely different document. *Gilliam,* 737 F.2d at 1503–05.

Starlite does not argue that it thought the collective bargaining agreement it signed was a different document. Nor does Starlite contend that the Union misrepresented to it the nature of the document it was asked to sign. *Gilliam,* therefore, offers no support for Starlite's defense of fraud in the execution.

Starlite further claims that it has no obligation to the Funds because it signed the collective bargaining agreement under coercion, or "economic duress." This argument fails for two reasons. First, Starlite is estopped from asserting duress to rescind the collective bargaining agreement because it made payments under the agreement for more than ten years. *See* Restatement (Second) of Contracts §§ 380–381 (1981); *NYSA–ILA Medical and Clinical Services Fund v. Carco, Inc.,* 607 F.Supp. 1217, 1220 n. 1 (D.N.J.1985). Second, because economic duress ordinarily makes a contract voidable, not void, *see* Restatement (Second) of Contracts § 175 cmt. d (1981), even a meritorious claim of duress would not relieve Starlite of its contractual obligation to make fund contributions under ERISA section 515. *See Ben-son,* 907 F.2d at 314 ("once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole").

Nor does section 515 permit Starlite's defense of lack of majority support for the Union. *See Benson,* 907 F.2d at 316; *Berry,* 919 F.2d at 90. Starlite argues that section 515 does not govern this case because it was enacted after the parties executed the collective bargaining agreement and does not apply retroactively. We need not decide the retroactivity issue, because the defense of lack of majority support for the union would not have been available to Starlite even prior to the enactment of section 515. By 1979, the year Starlite entered into the collective bargaining agreement, this court had already recognized that "courts have been extremely reluctant to recognize any defense to an employer's promise to pay into a pension fund. The trustees of the fund, although technically third-party beneficiaries, often can avoid contractual defenses that could be asserted against the union itself." *Huge v. Long's Hauling Co.,* 590 F.2d 457, 459 (3d Cir. 1978), *cert. denied,* 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285 (1979) (citing *Lewis v. Benedict Coal, supra*).

### B.

Having determined that Starlite is precluded from asserting defects in the formation of the collective bargaining agreement, we now consider whether Starlite is unconditionally required to make fund contributions on behalf of its unreported employees, even though those employees never collected any benefits under the plans. As a general rule, an employer is liable for fund contributions on behalf of all employees covered by a facially valid collective bargaining agreement, regardless of whether the employees actually collect benefits. The collective bargaining agreement signed by Starlite covers "all workers." App. at 27. On its face, the term "all workers" unambiguously includes both the

employees Starlite reported to the Funds and those not reported. Here, however, the record suggests that Starlite's unreported employees failed to collect benefits not because they lacked meritorious claims or because they were dilatory in submitting their claims, but because the Funds persistently violated their "watchdog" duties under ERISA to identify the employees and inform them of their participation in the plans. This circumstance militates against unconditionally requiring Starlite to make contributions to the Funds.

■ ERISA imposes a number of fiduciary obligations on multiemployer funds. A fund has in the first instance a duty of determining who is in fact a plan participant. *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 572, 105 S.Ct. 2833, 2841, 86 L.Ed.2d 447 (1985). In upholding the contractual right of a fund to conduct field audits of an employer's records, the Supreme Court in *Central Transport* stated: "ERISA clearly assumes that trustees ... will take steps to identify all participants and beneficiaries, so that the trustees can make them aware of their status and rights under the trust's terms." *Id.* at 571–72, 105 S.Ct. at 2841. Funds must also provide all participating employees with certain materials describing the employees' rights and obligations under the plan. *See, e.g.*, 29 U.S.C. §§ 1021, 1022, 1024(b) (1988 & Supp. II 1990). We have also held that, "[a]t a minimum, the fiduciary obligations of a pension fund trustee require that he notify the pensioner of his employer's failure to contribute to the fund as required by the pension agreement." *Rosen v. Hotel and Restaurant Employees & Bartenders Union*, 637 F.2d 592, 599–600 (3d Cir.), *cert. denied*, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981).

■ Nowhere does the record suggest that the Funds even attempted to satisfy their basic fiduciary obligations under ERISA to identify Starlite's employees and to apprise them of their status and rights

under the plans. There is no evidence that the Funds ever demanded either a certification from Starlite setting forth the names of its employees or a copy of payroll information. Either document would have readily enabled the Funds to identify and contact the employees for whom Starlite failed to make contributions.[1] Nor did the Funds attempt to conduct an audit of Starlite's records at any time during the ten years prior to 1989, even though the pension and welfare agreements clearly authorized the Funds to do so. App. at 41, 80.

■ As a result of the Funds' dereliction of its fiduciary obligations, there is no evidence that Starlite's unreported employees had any knowledge of or objective basis for expecting the benefits for which the Funds now seek contributions. Under these circumstances, the district court properly looked at facts other than the terms of the collective bargaining agreement to determine whether the Funds are entitled to receive unpaid contributions. We find, however, that the record does not reveal all the facts necessary to decide this issue.

We are unable to discern from the record which employees, if any, presently could bring a valid claim for benefits accruing during the period for which contributions are now sought. If the employees cannot assert such claims, then a judgment for the Funds would compel Starlite to contribute to plans from which its employees obtained no benefits in the past and are powerless to derive any future benefits. A judgment for the Funds under these circumstances would be a pure windfall. *See Sheet Metal Workers'*, 954 F.2d at 1510. *But see Gerber Truck*, 870 F.2d at 1151–56.

Accordingly, on remand the district court should conduct an evidentiary hearing to determine which if any unreported employees currently have a colorable claim against the Funds for benefits that accrued during the period for which contributions are being sought. Since an employer ordinarily would be required to make contribu-

---

**1.** Counsel for the Funds conceded at oral argument that the Funds never received any employ-

ee certification from Starlite.

tions pursuant to a facially valid agreement covering all employees, Starlite will bear the burden of proof on this issue. As to each unreported employee, Starlite may avoid contributions only by establishing that the employee no longer has a colorable claim for benefits. The district court should consider Starlite's liability for welfare contributions and pension contributions separately.[2]

Whether the employees presently have a colorable claim for benefits depends on whether they would be able to submit claims against fully back-dated coverage once Starlite makes the requested contributions. An employee has no colorable claim if a plan would not properly entertain the claim because it is time-barred, the employee has ceased working for Starlite and therefore no longer qualifies, or federal labor law precludes recovery. If, however, a Fund would be required to honor an employee's claim, then Starlite must contribute for that employee regardless of whether he or she in fact has a meritorious claim. This approach is mandated by dual considerations of equity and actuarial soundness. Starlite should not have to pay for welfare or pension coverage that the Funds have rendered ineffectual. At the same time, the Funds are "insurance vehicles" and must be able to receive contributions from all fully covered plan participants, not only those who collect benefits. *Gerber Truck*, 870 F.2d at 1154.

### IV.

We next discuss the Funds' claim for reimbursement of medical benefits paid to Zuzanna Podkowa, a former Starlite employee. The parties agree that Podkowa was ineligible for the $11,203.67 she received from the Funds after she terminated her employment with Starlite. The Funds contend that Starlite is liable to them in tort because it made fraudulent misrepresentations, which caused the Funds to believe that Starlite employed Podkowa at the time she submitted her claims. The Funds also assert that Starlite's factual misstate-

ments suggesting that Podkowa was a current employee constituted a breach of the collective bargaining agreement.

The district court found that the payments to Podkowa were directly occasioned by Starlite's reports and by its periodic payment of amounts requested by the Funds for her coverage. However, the court also found that the Funds failed to engage in even the most minimal policing of the Starlite account. *District Court Memorandum* at 11, App. at 186. Concluding that the Funds' inaction caused them to pay money to Podkowa that otherwise would not have been paid, the district court denied the Funds recovery of the disability payments.

Although the district court's factual findings are supported by the record, the court failed to make clear the precise legal principles it considered in reaching its decision. Absent a record specifying the legal theories on which the district court denied recovery, we are compelled to vacate the district court's decision.

On remand, the district court must decide whether the Funds can meet their burden of proving either fraud or breach of contract on the part of Starlite. Under general principles of tort law, the elements of fraud are: (1) a material factual misrepresentation; (2) made with knowledge or belief of its falsity; (3) with the intention that the other party rely thereon; (4) resulting in justifiable reliance to that party to his detriment. Restatement (Second) of Torts §§ 525–526 (1977). Specifically, the district court must consider whether Starlite made its reports and payments with the intent that the Funds would rely on them in determining the employment status of listed employees, *see id.* § 531, and whether reliance on Starlite's representations was justifiable under the circumstances, *see id.* § 537; W. Prosser and R. Keeton, *The Law of Torts* § 108 (5th ed. 1984).

Federal common law governs the construction of a collective bargaining agreement. *Textile Workers Union v.*

---

**2.** As the Funds' conceded at trial, App. at 155, their action for contributions is subject to the

six-year statute of limitations applicable to suits for breach of contract.

*Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957); *Sheet Metal Workers Local 19 v. Keystone Heating and Air Conditioning,* 934 F.2d 35, 40–41 (3d Cir.1991). To recover for breach of the collective bargaining agreement, the Funds must show that: (1) Starlite had a contractual obligation not to make reports or to remit contributions on behalf of individuals no longer in Starlite's employ; (2) Starlite breached this obligation; and (3) the damages sought by the Funds foreseeably flowed from the breach.

### V.

The Union's claim for unpaid dues presents two final issues. We first address whether the Union agreed to modify or waive Starlite's contractual obligation to hire only workers in good standing with the Union. We then consider whether union dues are an available remedy for breach of a collective bargaining agreement.

### A.

■■■■ We construe Starlite's obligations under the collective bargaining agreement in accordance with general principles of contract law. *See Keystone Heating and Air Conditioning,* 934 F.2d at 41. Under such principles, a course of performance by one party accepted or acquiesced in without objection by the other may be evidence of an agreed modification or waiver of a written term. Restatement (Second) of Contracts § 202(4) & cmt. g (1981). This rule applies "[w]here an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other." *Id.* § 202(4).

We will remand to the district court to determine whether by course of conduct the Union agreed to modify or waive its contractual right to collect dues on behalf of employees other than Zuzanna Podkowa and Elizabeth Matuszcak. The collective bargaining agreement expressly covers "all workers," *i.e.,* maids and housekeepers, employed by Starlite. App. at 27. For more than ten years, Starlite regularly re-

mitted dues on behalf of only two employees, even though it employed up to ten at any one time. Union representatives periodically visited Starlite. There is no evidence that Starlite ever prevented the Union representatives from speaking to any Starlite employees. Nor does the record indicate that Starlite ever misled the Union or its visiting representatives regarding the number or identity of its maids and housekeepers. The uncontradicted contentions of Starlite's owner suggest the opposite—that the Union specifically agreed to allow Starlite to report only two maids and housekeepers, regardless of the number employed. A reasonable fact finder could conclude that the Union knew that Starlite employed other maids and housekeepers throughout the many years in question and agreed by course of conduct to waive or modify the requirement that Starlite employ only Union members.

### B.

If the district court concludes that the Union did not waive its right to have Starlite employ only Union employees, then the Union is entitled to recover any damages foreseeably resulting from Starlite's breach. In cases similar to this, we have held that a court may consider union dues as an element of such damages. In *Burlesque Artists Ass'n v. I. Hirst Enterprises, Inc.,* 267 F.2d 414, 417 (3d Cir.1959), this court upheld a jury award of damages based upon an expert's testimony as to the amount of dues the association would have received had all of defendant's employees been union members as the parties' agreement required. This decision was reaffirmed in *Local 127, United Shoe Workers of America v. Brooks Shoe Mfg. Co.,* 298 F.2d 277, 281 (3d Cir.1962) ("[O]ur decision in [*Burlesque Artists*] supports reliance on union dues as an element of damages.") *Id.* at 281.

■■■■ Starlite argues that union dues are not an appropriate element of damages because 29 U.S.C. § 186(c)(4) prohibits the deduction of dues from an employee's pay absent written authorization. This argu-

ment is unpersuasive. *See International Brotherhood of Electrical Workers, Local No. 12 v. A–1 Electric Service, Inc.*, 535 F.2d 1, 1–2 (10th Cir.), *cert. denied*, 429 U.S. 832, 97 S.Ct. 94, 50 L.Ed.2d 96 (1976). In a suit for breach of contract, the general purpose of the law is to place the injured party in the position it would have attained had the contract been performed. 11 S. Williston, *On Contracts* § 1338 (3d ed. 1968). Where an agreement obliges an employer to hire only union members, it is reasonable to expect that the Union will receive membership dues if the employer complies. Consequently, such dues are compensable if their loss flows proximately from the employer's breach. *See Sheet Metal Workers Int'l Ass'n, Local Union No. 162 v. Jason Mfg., Inc.*, 694 F.Supp. 1476, 1477 (E.D.Cal.1987), *aff'd*, 900 F.2d 1392 (9th Cir.1990).

## VI.

For the foregoing reasons, we will vacate the district court's judgment and will remand for further proceedings consistent with this opinion. On remand, the district court should make specific findings of fact and conclusions of law as to each claim so as to make clear the reasons for its decision and to facilitate any further appellate review.