NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3164
_____

IBEW LOCAL UNION NO. 102; IBEW LOCAL 102 WELFARE, PENSION,
ANNUITY AND JOINT APPRENTICESHIP TRAINING FUNDS AND THEIR
BOARDS OF TRUSTEES; IBEW LOCAL 102 DISTRIBUTION FUND,
as collection agent for the National Electrical Benefit Fund

v.

QUALITY ELECTRIC & DATA, INC.,
                                        Appellant
_____

Appeal from the United States District Court
for the District of New Jersey
(Civil No. 2-09-cv-04037)
District Judge: Honorable Katharine S. Hayden
_____

Submitted Under Third Circuit LAR 34.1(a)
May 22, 2012

Before:  RENDELL, FUENTES, and HARDIMAN, Circuit Judges

(Opinion Filed: July 17, 2012)
_____

OPINION OF THE COURT
_____


FUENTES, *Circuit Judge.*

Quality Electric and Data, Inc. ("Quality") appeals from the District Court's grant of summary judgment in favor of IBEW Local Union No. 102 (the "Union"); IBEW Local 102 Welfare, Pension, Annuity and Joint Apprenticeship Training Funds and their Board of Trustees; and IBEW Local 102 Distribution Fund (as collection agent for the National Electrical Benefit Fund) (collectively, the "Funds"). Quality alleges that the District Court erred when it held that the company was required to make pension contributions to the Funds for all its employees working within the Union's jurisdiction. For the reasons stated below, we will affirm.[1]

## I.

Because we write primarily for the parties, we set forth only the facts and history relevant to our conclusion.

Quality is an electrical contractor based in Rockaway, New Jersey. Peggy Coiro is the President of Quality, and her husband, Louis Coiro, is the Vice President. The Union is a New Jersey labor organization that represents electricians. The Funds are ERISA multi-employer employee pension plans and are third-party beneficiaries of the Union's collective bargaining agreement (the "CBA"). *See* 29 U.S.C. § 1002(2); *Lewis v. Benedict Coal Corp.*, 361 U.S. 459 (1960) (describing a similar pension fund as a third-party beneficiary of the collective bargaining agreement between the union and the employer). The Union's CBA requires employers to contribute to the Funds, which in turn pay pension benefits to workers.

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

In 2004, Gary Pfarr ("Pfarr"), a Union representative, met with Louis Coiro and insisted that Quality use Union labor on one of its jobsites. Pfarr and Louis Coiro agreed that Quality would sign up with the Union. In September 2004, the Union presented Quality with several documents known as "Letters of Assent." Essentially, by signing these letters, Quality agreed to be bound by the CBA, which also covered over 200 other employers/members. Louis Coiro claims that Pfarr told him that the Letters of Assent bound Quality to the CBA exclusively for its Union employees and employees who worked on Union jobsites. Louis Coiro instructed Quality's President, Peggy Coiro, to execute the Letters of Assent on behalf of Quality. The parties stipulated in the District Court that the Letters of Assent constituted a pre-hire agreement pursuant to 29 U.S.C. § 158(f) [hereinafter "8(f)"].

The Letters of Assent stated that Quality "agree[d] to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor agreements," i.e. the CBA. JA161. Moreover, pursuant to the CBA, Quality agreed to "recognize[] the Union as the exclusive representative of all [its] employees performing work within the jurisdiction of this Union." JA165. The CBA explained the trade and geographic scope of the Union's jurisdiction and required pension contributions to the Funds for employees covered under the CBA.

Over the following two years, Quality sporadically used Union labor and worked on Union jobsites. When it did so, Quality made contributions to the Funds as required by the CBA. During this period, Quality also employed individuals who were not Union

3

members and who did not work on Union jobsites. Quality made no contributions to the Funds for these employees.

In 2008, the Funds ran a compliance audit on Quality concerning the period from January 2003 through December 2006. After revision, the audit showed that Quality owed the Funds $201,424.40 for delinquent pension contributions. Quality refused to pay, and the Union and Funds thus sued Quality in the District Court, demanding payment of the outstanding pension contributions. Both sides moved for summary judgment. The District Court granted the Union and Funds motion and denied Quality's.

The District Court concluded that the parties' 8(f) pre-hire agreement (the Letters of Assent) bound Quality to the CBA. Further, it held that the CBA was unambiguous and made the Union the exclusive bargaining representative of all Quality's employees who performed work within the Union's trade and geographic jurisdiction. Since Quality's non-union employees were covered under the CBA, Quality was required to contribute to the Funds for these employees. The court rejected Quality's argument that the CBA was void *ab initio* due to fraud in the execution and awarded the Union and Funds the delinquent pension contributions, interest, liquidated damages, attorneys' fees, and costs.

## II.

We exercise plenary review over a district court's summary judgment ruling. *Twp. of Piscataway v. Duke Energy*, 488 F.3d 203, 208 (3d Cir. 2007).

On appeal, Quality makes the same arguments that it made to the District Court. First, Quality argues that the Union never became the exclusive bargaining representative

4

of all its employees.  Therefore, Quality claims that it is not required to contribute to the Funds for all of its employees.  Second, Quality argues that the CBA is void *ab initio* due to fraud in the execution.

Quality argues that the District Court incorrectly concluded that it was obligated to contribute to the Funds for its non-union employees.  Quality contends that the District Court impermissibly converted the 8(f) agreement into an agreement under 29 U.S.C. § 159(a) [hereinafter "9(a)"].  Quality relies on language in the Letters of Assent that states, "[t]he Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees."  JA161.  Quality argues that, because its employees did not authorize the Union as their 9(a) representative, the Union never became the exclusive bargaining agent for all Quality's employees.  Consequently, Quality insists that it was only required to contribute to the Funds for its employees who were Union members or who worked on Union jobsites, which it did.

The Union and Funds argue that Quality's understanding of 8(f) agreements is inconsistent with well-established law, and we agree.  While Quality is correct that an 8(f) agreement cannot convert into a 9(a) agreement absent a majority election, conversion is not at issue in this case.  *See Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, Local 3 v. NLRB*, 843 F.2d 770, 778-79 (3d Cir. 1988).  The Union does not claim to be the 9(a) representative of Quality's employees.  An 8(f) pre-hire agreement, unique to the construction industry, binds an employer to a collective bargaining agreement in relatively the same manner as a 9(a) agreement.  *See id.* at 778.

5

The only true difference between an 8(f) agreement and a 9(a) agreement is that a 9(a) agreement requires an employer to bargain with the union after the agreement expires; whereas when an 8(f) agreement expires, the employer can walk away. *See id.*

The CBA validly and unambiguously requires Quality to make pension contributions to the Funds for all its employees working within the Union's jurisdiction, and we must interpret and enforce unambiguous agreements according to their terms. *Shaver v. Siemens Corp.*, 670 F.3d 462, 496 (3d Cir. 2012). First, the Letters of Assent bind Quality to "current and subsequent approved labor agreements," including the CBA. JA161. Next, the CBA clearly requires Quality to "recognize[] the Union as the exclusive representative of all its employees performing work within the jurisdiction of this Union." JA165. Lastly, the CBA requires contribution to the Funds for "each employee under the jurisdiction of this agreement [the CBA]." JA180. The Union's jurisdiction is defined geographically and by trade; jurisdiction "is not a subject for negotiations." JA194. Quality thus cannot escape the CBA's plain meaning that it was required to make pension contributions to the Funds for all its employees performing work within the Union's "trade and territor[y]." JA194.

Quality's second argument—that the CBA is void *ab initio* due to fraud in the execution—is also unpersuasive. There are only three limited defenses available to employers against fund claims to recover unpaid pension contributions: (1) that the fund contributions themselves are illegal; (2) that the collective bargaining agreement is void *ab initio* due to fraud in the execution; and (3) that the employees have decertified the union as their bargaining representative. *Agathos v. Starlite Motel*, 977 F.2d 1500, 1505

6

(3d Cir. 1992).  Fraud in the inducement is not a defense that is available to Quality, and fraud in the execution exists only when the agreement that is signed is radically different from what the defrauded party was led to believe it was signing.  *See Connors v. Fawn Mining Corp.*, 30 F.3d 483, 490 (3d Cir. 1994) ("[T]he distinction between fraud in the inducement and fraud in the execution is that, 'the former induces a party to assent to something he otherwise would not have; the latter induces a party to believe the nature of his act is something entirely different than it actually is.'" (quoting *S.W. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986))).  Absent fraud in the execution, pension funds are entitled to rely on unambiguous collective bargaining agreements as written, unaffected by oral modifications.  *See Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 138 (3d Cir. 1993).

Here, Louis Coiro alleges that Pfarr told him that he would only have to contribute to the pension fund on behalf of his Union employees and his employees who worked on Union jobs.  However, even if Pfarr did make an oral promise to ignore the text of the agreement, this is insufficient to establish fraud in the execution.  *See Connors,* 30 F.3d at 490; *Teamsters*, 989 F.2d at 138.  Quality was aware that the Letters of Assent bound it to the CBA, and it had the opportunity to review the CBA before signing.  Quality does not claim that the Union altered or inserted terms into the CBA without Quality's knowledge.  Therefore, Quality does not allege sufficient facts to support its fraud in the execution claim.

**III.**

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of Plaintiffs.