**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3961
_____

FRANK SUMMERS;
JOSELYN M. SUMMERS,
                                        Appellants

v.

THE UNITED STATES;
JOHN DOES I-X;
ABC COMPANIES I-X
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-09-cv-04920)
District Judge: Hon. Joseph E. Irenas
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 11, 2013

BEFORE:  FUENTES, COWEN, and BARRY,  <u>Circuit Judges</u>

(Filed: October 29, 2013)

_____

OPINION
_____

COWEN, Circuit Judge

Frank Summers ("Summers") and his wife, Joselyn M. Summers ("JMS"), raised claims against the United States of America ("the Government"); Summers raised claims for negligence and premises liability, and JMS raised a derivative claim for loss of consortium. Following a six-day bench trial, the District Court entered judgment on all of those claims against Summers and JMS, and in favor of the Government. Summers and JMS now appeal the entry of judgment. For the reasons that follow, we will affirm.[1]

## I.

The claims at issue here relate to Summers's work at the Doughboy Gymnasium ("the Gym"), which is located at the Dix unit of Joint Base McGuire-Dix-Lakehurst, more commonly known as "Fort Dix." Summers's employer had been hired to replace the Gym's roof. On January 2, 2008, as Summers worked to complete that task, he climbed a roof access ladder located on the side of the Gym ("the Ladder"), inspected the roof, and began descending the Ladder. As he neared the bottom rungs of the Ladder—when his feet were approximately two and a half feet from the ground—Summers lost his balance and fell to the ground.

Summers testified at trial that he fell because the Ladder had "jarred away from the building and twisted and" thrown him. (J.A. 55.) On cross examination, he explained

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1346(b)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291.

that "[w]hat made me fall was the ladder jarred from the building, bounced." (J.A. 76.)

He further explained that the Ladder had "[n]ot swung" from the building, but had

"[j]arred enough to startle me not to know what to do." (*Id.*)

The Ladder, as described by the District Judge, was comprised of steel rungs and

steel side rails, and was fastened to the Gym's exterior brick wall by three sets of steel

bolts.  A fourth set of steel bolts, which should have fastened the bottom of the Ladder to

the Gym's exterior brick wall, was completely detached from the wall.  The bottom of the

Ladder was permanently bent sideways, along the same plane as the wall.[2]

Both the plaintiff-appellants and the Government retained experts who examined

and tested the Ladder, and testified at trial.  Based on their testimony, the District Judge

found that on January 2, 2008, as Summers descended the Ladder, the Ladder was

completely stable along the "Y-axis" (i.e., vertically) and the "Z-axis" (i.e., in a direction

moving away from the wall).[3]  However, the District Judge recognized that the experts'

testimony "radically differ[ed]" with respect to the Ladder's ability to shift along the

"X-axis" (i.e., horizontally or laterally).  (J.A. 8.)  The plaintiff-appellants' expert, George

Widas, testified that he was able to grab the bottom rung of the Ladder with his hand and

move it approximately twelve inches, from side to side.  But the Government's expert,

---

[2] These findings are not challenged on appeal.

[3] These findings, like those relating to the make-up of the Ladder, are not
challenged on appeal.

3

Jack Krafchick, opined that such movement was "impossible." (J.A. 230.)[4] Krafchick testified that the Ladder, despite its condition—i.e., despite the condition of the fourth set of steel bolts, which should have been but were not attached to the Gym's exterior brick wall, and the bottom of the Ladder, which was permanently bent sideways—was capable of no greater lateral movement than three-sixteenths of an inch. He described such movement as "pretty negligible." (J.A. 217.)

The District Judge found that Krafchick's testimony regarding the Ladder's lateral movement was more persuasive than Widas's related testimony. He explained that this finding was based neither on the experts' credibility nor their underlying scientific theories and testing methodologies. Instead, he explained that he found Widas's "explanation for the extent of deflection" along the X-axis to be factually and "fundamentally flawed." (J.A. 10.)

The District Judge assumed *arguendo* that Summers had established the Government's liability on both the negligence and premises liability claims. But the District Judge concluded that Summers had not established another element shared by both of those claims: proximate cause. He reiterated the earlier finding that the Ladder was incapable of significant movement along the X-axis, and concluded that Summers's testimony that the Ladder "jarred" was inconsistent with both the Ladder's inability to move along the Y- and Z-axies, and its limited ability to move laterally along the X-axis.

---

[4] Krafchick opined that the Ladder was incapable of significant movement along the X-axis. He explained, "a one foot deflection in the lateral direction would suggest that the side rails [of the Ladder] were made out of spaghetti. They're made out of

4

Because he concluded that the Ladder's condition rendered it incapable of significant movement, he reached three further conclusions: first, that the Ladder's condition had not caused Summers to fall; second, that the Ladder's condition was not the proximate cause of Summers's injuries; and third, that Summers had failed to carry his burden of proof on the negligence and premises liability claims.[5]

### III.

On appeal, Summers and JMS challenge the findings of fact that underlie the District Judge's conclusion that Summers failed to carry his burden of proof with respect to the proximate cause element of both of his claims. Challenges to such findings are reviewed for clear error. *See* Fed. R. Civ. P. 52(a)(6); *Lanning v. Se. Pa. Transp. Auth. (SEPTA)*, 181 F.3d 478, 481 (3d Cir. 1999). "Factual findings are not clearly erroneous if the record contains sufficient evidence to support them." *Agathos v. Starlite Motel*, 977 F.2d 1500, 1504 (3d Cir. 1992). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it . . . . Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985).

Here, the record evidence supports the District Judge's findings concerning the Ladder's relative inability to move along the X-axis. Specifically, for the reasons recited

---

structural steel. . . . They can't deflect that much." (J.A. 232.)

[5] Because the District Judge concluded that Summers failed to carry his burden of proof on those claims, he necessarily concluded that JMS's derivative loss of consortium

5

above, the record evidence supports the District Judge's decision to credit Krafchik's testimony over Widas's testimony. Accordingly, we find no clear error in the District Judge's analysis, and no reason to disturb the judgment on appeal.

## IV.

For the foregoing reasons, we will affirm the judgment entered by the District Court.

---

claim failed.