NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2654
_____

FRANK KELLY; TODD R. RAY, as Trustees of the Plumbers and Pipefitters
Local No. 520 Health and Welfare Fund; Plumbers and Pipefitters Local
No. 520 Pension Fund; Plumbers and Pipefitters Local No. 520 Annuity Fund

v.

GAS FIELD SPECIALISTS, INC.,
                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 1-14-cv-00004)
District Judge:  Honorable Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)
June 5, 2018

Before:  AMBRO, JORDAN, and VANASKIE, *Circuit Judges*

(Filed: June 19, 2018)
_____

OPINION[*]
_____

JORDAN, *Circuit Judge*.

Gas Field Specialists, Inc. ("GFS") appeals from the District Court's order

granting summary judgment in favor of Frank Kelly and Todd C. Ray, as trustees (the

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

"Trustees") of the Plumbers and Pipefitters Local No. 520 Health and Welfare Fund, Pension Fund, and Annuity Fund (the "Funds"), on their claim to recover delinquent contributions under §§ 502(a) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a), 1145. For the reasons that follow, we will affirm.

I.    **BACKGROUND**[1]

At all times relevant to this appeal, GFS was an "employer" and the Plumbers and Pipefitters Local Union No. 520 ("Local 520") was an "employee organization" as defined under ERISA. 29 U.S.C. § 1002(4)-(5). The Funds are ERISA multiemployer employee benefit plans. 29 U.S.C. § 1002(3), (37). Local 520 entered into a collective bargaining agreement with the Mechanical Contractors Association of Central Pennsylvania on behalf of its members (the "Agreement"), which governed, among other things, employee wages, hours, working conditions, and other benefits from 2012 to 2015. The Agreement set forth the trade and geographic scope of Local 520's jurisdiction and required employers to contribute to the Funds for employees covered under the Agreement. GFS joined the Agreement after its Vice President of Operations signed a Recognition Joinder on June 11, 2012, which provided that GFS "adopts and

---

[1] We view the facts in the light most favorable to the nonmoving party. *See infra* note 3.
    We are addressing the scope of GFS's contribution obligations solely as to employees covered under the 2012-2015 collective bargaining agreement between Local 520 and GFS. All references to GFS employees' union membership pertain only to membership in Local 520.

agrees to be bound by the terms and conditions of the [Agreement.]" (App. at 348.) The Funds are third-party beneficiaries to the Agreement.

In September 2013, the Funds undertook a compliance audit. It revealed that, although GFS had employed both union and non-union employees, it had only made monthly contributions on behalf of union employees. In January 2014, the Trustees filed suit in the United States District Court for the Middle District of Pennsylvania, seeking a full audit of GFS's employment and payroll records and demanding payment of any delinquent contributions that GFS owed to the Funds.

The parties filed cross-motions for summary judgment on liability. Neither disputed the Agreement's validity, and neither argued that its terms were ambiguous, but they vigorously disputed the scope of GFS's contribution obligations under the Agreement. The Trustees pointed to broad language in the Agreement covering "all employees of an Employer," and argued that GFS had thus agreed to make contributions for all employees. (App. at 343, App'x A.) GFS countered that it was always the company's understanding that any agreement with Local 520 extended only to union employees, and it argued that it had not made contributions for non-union employees under prior agreements for nearly a decade, without issue.

The District Court granted the Trustees' motion, and denied GFS's motion. It concluded that the plain language of the Agreement required GFS to contribute to the Funds on behalf of "all employees" falling within the Agreement's trade and geographic scope, regardless of union or job status or particular project assignment. (App. at 11.) It also concluded that GFS had not shown that the Agreement was void *ab initio* due to

3

fraud in the execution and had not otherwise established a recognized defense to its contribution obligations. Thus, the Court concluded that the Trustees were entitled to summary judgment on liability, but it deferred entering judgment pending the parties' submissions on damages.

Thereafter, auditors reviewed GFS's employee roster and contribution records and calculated the delinquent contributions owed to the Funds. The parties submitted those results to the Court, reporting GFS's outstanding liabilities as follows:

- Pension Fund: $646,021.14 in contributions, $96,903.17 in liquidated damages, and $184,608.17 in interest;

- Annuity Fund: $248,055.66 in contributions, $37,208.35 in liquidated damages, and $70,993.25 in interest; and

- Health and Welfare Fund: $648,467.35 in contributions, $97,270.10 in liquidated damages, and $185,893.68 in interest.

(App. at 19.)

GFS did not dispute the auditors' calculations. Instead, it sought to excuse or reduce the amount it owed based on certain alternative benefits it had provided to employees for whom it did not make fund contributions. Specifically, GFS said that it had provided alternative health insurance benefits at a cost of $146,166.23 and had made contributions to a 401(k) retirement plan in the amount of $25,566.31. GFS asserted the alternative health insurance benefits as a total defense to an ERISA damages award for the Health and Welfare Fund. It also argued that it was at least entitled to offset the total amount of alternative benefits from any damages awarded to the Health and Welfare Fund and the Annuity Fund, highlighting that the Funds otherwise stood to receive an

4

unjust windfall recovery of contributions on behalf of employees for whom they did not provide any benefits.

The District Court rejected GFS's damages arguments. It reiterated its view that the company had failed to establish any of the recognized defenses to contribution. The Court explained that GFS was not entitled to unilaterally excuse or reduce its contractual obligations to contribute to the Funds by providing alternative benefits, "[n]o matter how well-intended" its decision. (App. at 24.) Nor was the Court persuaded by GFS's request for an "equitable exception" to prevent an unjust windfall to the Funds. (App. at 23.) It therefore entered summary judgment in favor of the Trustees and against GFS for the full amount of its delinquent contributions.[2] This timely appeal followed.

## II. DISCUSSION[3]

GFS raises the same arguments before us that it made to the District Court, and we too are unpersuaded.

Section 515 of ERISA provides that all employers "obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such

---

[2] The District Court also granted the Trustees' motion for attorneys' fees and costs, which GFS has not appealed.

[3] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of a grant of summary judgment is plenary. *Deweese v. Nat'l R.R. Passenger Corp. (Amtrak)*, 590 F.3d 239, 244 n.8 (3d Cir. 2009). Summary judgment is appropriate if there are no genuine disputes of material fact and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In reviewing a summary judgment ruling, we consider the facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 248-49.

contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. "Congress's purpose in enacting section 515 was to allow multiemployer welfare funds to rely upon the terms of collective bargaining agreements and plans as written, thus 'permit[ting] trustees of plans to recover delinquent contributions efficaciously[.]'" *Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1103 (3d Cir. 1996) (first alteration in original) (citation omitted). We apply the "basic principle of contract construction" that requires courts to "interpret and enforce unambiguous agreements according to their terms." *Shaver v. Siemens Corp.*, 670 F.3d 462, 496 (3d Cir. 2012). We have said that "[e]xtrinsic evidence … may *not* be used to create an ambiguity where none exists." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 145 (3d Cir. 1999).

GFS appears to concede – as it must – that the Agreement, on its face, is not limited to union employees. Rather, it provides that Local 520 is "the sole and exclusive bargaining representative for *all employees in a unit consisting of journeymen, apprentices and other employees described in [the Agreement]* in the employ of the Employer with respect to … all work described in Article II in this Agreement." (App. at 325 ¶ 6(b) (emphasis added).) Article II broadly defines the "trade or work jurisdiction" of the Agreement as "cover[ing] the rates of pay, rules and working conditions of *all journeymen and apprentices* engaged in" plumbing and pipefitting work as set forth in the Agreement, with geographical and trade jurisdiction further defined in Appendix A. (App. at 325 ¶ 7 (emphasis added).) Appendix A then states, in similarly broad language,

6

that "[t]his Agreement shall apply to and cover *all employees* of an Employer employed to perform or performing plumbing, heating and piping work as listed hereinafter within the geographical jurisdiction allocated to the local union by the United Association[.]" (App. at 343 (emphasis added).)

The Agreement's employer contribution provisions also contain broad, unlimited references to "employee." The Health and Welfare Fund and Pension Fund provisions require contributions based on hours worked by "each apprentice and journeyman covered by this [A]greement," and the Annuity Fund provision requires contributions for hours worked by "each employee." (App. at 336-37 ¶¶ 46, 47.) The Agreement unambiguously covers "each employee," regardless of union membership or project assignment. Thus, the District Court correctly concluded that GFS's suggested reading is betrayed by the plain language of the Agreement itself.

We also agree that GFS failed to establish a viable defense. We have recognized three defenses for employers against a fund's claim to recover delinquent contributions, only one of which arguably applies here: fraud in the execution. *See Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992) (listing defenses, including (1) that the fund contributions themselves are illegal, (2) that the agreement is void *ab initio*, due to fraud in the execution, and (3) that the employees have voted to decertify the union as their bargaining representative); *accord McCormick*, 85 F.3d at 1106; *Connors v. Fawn Min. Corp.*, 30 F.3d 483, 490 (3d Cir. 1994). We have described fraud in the execution as tantamount to "excusable ignorance of the contents of the writing signed," *Fawn Min. Corp.*, 30 F.3d at 491 (citation omitted), which GFS does not argue here. Rather, GFS

7

relies on past practices and an unwritten understanding with Local 520 as modifying the unambiguous terms of a written collective bargaining agreement. That is insufficient. *See McCormick*, 85 F.3d at 1103-04 (citing cases rejecting additional defenses such as fraud in the inducement or oral promises to disregard the text of an agreement).

Finally, we reject GFS's entreaty that we reduce its liability to prevent the Funds from receiving an unjust windfall recovery. We have not previously endorsed a fourth "equitable" defense, and we decline to do so today.[4] *See McCormick*, 85 F.3d at 1104-06 ("If it means nothing else, section 515 means that, at least when the Trustees [of the fund] are not implicated in the alleged misconduct, their suit cannot be thwarted by defenses not apparent from the face of the [collective bargaining a]greement." (first alteration in original and emphasis omitted) (quoting *Bituminous Coal Operators Ass'n v. Connors*, 867 F.2d 625, 634 (D.C. Cir. 1989))).

We adhere to a bright-line interpretation of § 515, which our case law has described "as severely limiting the defenses available to an employer who has signed an agreement which commits it to make contributions to a benefit fund." *Fawn Min. Corp.*,

---

[4] GFS has not argued that the Trustees acted in persistent dereliction of their fiduciary duty to pursue the Funds' contractual right of contribution, as was the concern in *Agathos v. Starlite Motel*, 977 F.2d at 1507. Indeed, the Trustees filed suit to recover any delinquent contributions within months of conducting an initial compliance audit. GFS's reliance on the dissenting opinion in *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148 (7th Cir. 1989) (en banc), is misplaced. We have cited approvingly the majority opinion in *Gerber Truck* at least twice. *See Fawn Min. Corp.*, 30 F.3d at 491 (discussing *Gerber Truck* and distinguishing between valid defense of fraud in the execution and invalid defense of fraud in the inducement); *see also McCormick,* 85 F.3d at 1105-06 (discussing *Gerber Truck*, explaining that courts have construed § 515 as limiting defenses available to an employer sued by a welfare fund, and declining to recognize fourth defense of mutual mistake).

8

30 F.3d at 490; *see also McCormick*, 85 F.3d at 1105 (noting Congress's concern that multiemployer plans – as third party beneficiaries – "must be able to rely on the plain language of collective bargaining agreements … in order to ensure that they have sufficient funds to pay out required benefits"). The Funds are entitled to rely on the Agreement as written, and GFS is liable for its delinquent contributions under that Agreement.

## III. CONCLUSION

For those reasons, we will affirm the District Court's grant of summary judgment in favor of the Trustees and against GFS.