**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Central States, Southeast and Southwest Areas Health and Welfare Fund and Howard McDougall, trustee, Plaintiffs–Appellants,**

v.

**HARTLAGE TRUCK SERVICE, INCORPORATED, Defendant– Appellee.**

No. 92–1756.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1993.

Decided April 30, 1993.

Albert M. Madden, Robert A. Coco, (argued), William W. Leathem, Central States, Southeast & Southwest Area Pension Fund Law Dept., Rosemont, IL, Constance M. Borek, Resolution Trust Corp., Elk Grove Village, IL, for plaintiffs-appellants.

Thomas C. Walsh, Cornelius L. McGrath (argued), Dennis C. Donnelly, Bryan Cave, St. Louis, MO, for defendant-appellee.

Before BAUER, Chief Judge, COFFEY, and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

The Central States, Southeast and Southwest Areas Pension Fund, the Central States, Southeast and Southwest Areas Health and Welfare Fund, and Howard McDougall (collectively "the Funds") sued Hartlage Truck Service, Incorporated ("Hartlage") pursuant to Section 515 of the Employee Retirement Income Security Act, 29 U.S.C. § 1145 ("ERISA"). The Funds are multiemployer funds that provide pension, health, and welfare benefits to employees covered by various collective bargaining agreements. The Funds sought to compel Hartlage to pay them contributions on behalf of three Hartlage employees. The district court granted Hartlage's motion for summary judgment and the Funds appeal. Because we conclude that Hartlage was not required to make contributions on behalf of the three employees, we affirm.

I.

From 1985 to 1991, Hartlage and Local Union Number 600 of the International Brotherhood of Teamsters ("the Union") were bound by two collective bargaining agreements ("the CBAs") that divided employees into three categories: casual, probationary, and regular seniority employees.[1] Hartlage was also bound by trust agreements with the Funds. Among other

---

1. The second collective bargaining agreement substituted the phrase "replacement casual employees" for "casual employee." The definitions used to describe the terms are identical and, for convenience, we will use only the first—"casual employee"—throughout this opinion.

things, the trust agreements provided that Hartlage make payments to the Funds as required by the CBAs and applicable law. Appellants' Index at 117. The CBAs indicated that Hartlage would pay contributions for regular seniority employees, but not for casual or probationary employees. *Id.* at 48, 76. The CBAs defined a casual employee as a person "hired to replace a regular seniority employee who is absent, on vacation, sick, or injured." *Id.* at 37, 55. The CBAs further provided that casual employees "may be used indefinitely as long as they are replacing regular seniority employees who are absent, sick, injured, or on vacation...." *Id.* Also, those persons employed as casual employees were to be notified at the time Hartlage hired them of their status as casual employees. *Id.* In addition, casual employees were not to accrue seniority. *Id.* The CBAs defined probationary employees as employees hired on a trial basis that Hartlage intended to become members of the regular work force after they met certain qualifying standards. *Id.* at 36, 56. Although the agreements do not explicitly define the phrase "regular seniority employee," the agreements did state that a probationary employee becomes a regular seniority employee after successfully completing thirty consecutive calendar days as a probationary employee. *Id.* at 36, 56–57.

On April 26, 1985, Robert Brand, a Hartlage regular seniority employee, was in an automobile wreck that left him permanently and totally disabled. He has not worked for Hartlage since his accident and will never be able to return to work. *Id.* at 124. In June 1987, Donald Trice, another of Hartlage's regular seniority employees, also became permanently and totally disabled after he suffered a heart attack. Like Brand, Trice has not worked for Hartlage since he became disabled. *Id.* at 26.

Jerry Taylor, Robert Vorwold, and John Vail replaced Brand and Trice. Taylor was hired by Hartlage in June 1987 to replace Brand. *Id.* at 29. From June 1987 through November 1989, Taylor often worked for Hartlage only one or two days per week and rarely worked a full forty-hour week. *Id.* Taylor worked a total of 24 days for Hartlage during 1990 and did not work at all during 1991. *Id.* In his employment application, Taylor acknowledged his status as a casual employee for whom Hartlage would make no payments to the Funds. Exh. H to R. Doc. 19.

Hartlage hired Vorwold in July 1987 to replace Trice. Aff. of Kenneth Hartlage at 5. Vorwold worked for Hartlage until August 1988 and has not worked for Hartlage since that date. *Id.* At the time of his hiring, Hartlage notified Vorwold of his status as a casual employee. *Id.* at 6.

John Vail worked for Hartlage sporadically from 1964 through December 1988. *Id.* at 7. During most of this time, the St. Louis City Fire Department employed Vail full-time as a fireman. *Id.* at 7–8. Vail worked for Hartlage only when his schedule with the Fire Department permitted him to do so. *Id.* at 7–8. Often, he would work only one or two days a week and, at times, several years would pass without Vail working for Hartlage at all. *Id.* Vail replaced Brand from April 1985 until June 1987, when Hartlage hired Taylor. *Id.* After June 1987, Vail worked as a replacement for other regular seniority employees who were unavailable. *Id.* Vail died in 1989. *Id.* at 7–8.

Hartlage maintained a seniority list of employees represented by the Union. Taylor, Vorwold, and Vail were never placed on that list. *Id.* at 6–8. Also Hartlage hired all three with the intent that they would not become members of the regular work force. *Id.*

The Funds sued Hartlage because Hartlage did not make contributions to the Funds on behalf of Taylor, Vorwold, and Vail. The district court granted Hartlage's motion for summary judgment because it found that Taylor, Vorwold, and Vail were casual employees and, as such, were not entitled to have Hartlage make contributions to the Funds on their behalf. On appeal, the Funds claim that Taylor, Vorwold, and Vail were regular seniority employees because they replaced Brand and Trice who were permanently and totally

disabled and, as a result, will never return to work.

We must decide if Taylor, Vail, and Vorwold were casual employees or regular seniority employees. If they were casual employees, Hartlage is not obligated to make payments to the Funds on their behalf. If they were regular seniority employees, however, Hartlage is obligated to make the payments.

## II.

### A. Standard of Review

We review the district court's decision to grant Hartlage's motion for summary judgment *de novo. Vukadinovich v. Board of Sch. Trustees*, 978 F.2d 403, 408 (7th Cir. 1992).

### B. ERISA Section 515

 Section 515 section requires that when parties agree to contribute to pension plans, they do so to the extent not inconsistent with law, *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 87–88, 102 S.Ct. 851, 861–862, 70 L.Ed.2d 833 (1982); *Central States v. Gerber Truck Serv.*, 870 F.2d 1148, 1153 (7th Cir.1989), and to the extent promised.[2] *Laborers Health v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539, 549, 108 S.Ct. 830, 836, 98 L.Ed.2d 936 (1988). Employers are required to make contributions only on behalf of those employees indicated by the agreements. *Agathos v. Starlite Motel*, 977 F.2d 1500, 1506 (3d Cir.1992). As an initial matter, we therefore look to the agreements at issue here to decide whether Hartlage is liable for contributions on behalf of Taylor, Vorwold, and Vail.

Hartlage's trust agreements with the Funds required it to make contributions as stipulated in the CBAs. The CBAs required Hartlage to make payments on behalf of regular seniority employees, but not casual employees. Under the CBAs' definition, Hartlage had to fulfill three requirements when it hired casual employees.

First, any such casual employees had to be hired to replace regular seniority employees who were absent, sick, or injured. Appellants' Index at 37, 55. Second, casual employees could be used "indefinitely" as long as they were replacing regular seniority employees who were absent, sick, or injured. *Id.* Third, the CBAs required that Hartlage notify those persons when they were hired of their status as casual employees. *Id.*

 In this case, Taylor, Vorwold, and Vail replaced Brand and Trice. Brand and Trice were two regular seniority employees who were absent, sick, or injured. Brand was injured in an automobile accident, and Trice's heart attack left him absent from and unable to work. Next, Hartlage could have used Taylor, Vorwold, and Vail "indefinitely" to replace Brand and Trice. Therefore, under the terms of the CBAs, that Brand and Trice will never return to work for Hartlage is irrelevant. The CBAs only required that Hartlage notify Taylor, Vorwold, and Vail of their status as casual employees when they were hired. In this case, it is undisputed that both Taylor and Vorwold were notified of their status as casual employees at the time of their hiring. The record does not reveal whether Hartlage notified Vail of his status as a casual employee. The facts indicate that Hartlage employed Vail sporadically and that Vail worked full-time as a fireman. Vail typically worked one or two days a week and at times went several years without working for Hartlage at all. Given these facts, we conclude that Vail must have received at least constructive notice of his status as a casual employee and, under these facts, that is enough. Thus, Hartlage satisfied all three requirements of the CBAs.

We note two additional relevant facts. First, Hartlage never intended that Taylor, Vorwold, and Vail become members of its regular work force. This is significant be-

---

**2.** Section 515 provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

cause the CBAs indicate that probationary employees are those persons hired by Hartlage with the intent that they become regular seniority employees. The CBAs do not define regular seniority employees, but do provide that probationary employees can become regular seniority employees after working for thirty days. Although not determinative, Hartlage's intent that Taylor, Vorwold, and Vail were casual employees further suggests that they were casual employees for purposes of the CBAs. Second, Hartlage never placed Taylor, Vorwold, and Vail on its seniority list of employees represented by the Union. Under the CBAs, casual employees were not to acquire seniority.

■ These undisputed facts, taken together, indicate that Taylor, Vorwold, and Vail were casual employees for purposes of the CBAs. We must enforce the terms of the CBAs when those terms are unambiguous. *Central States v. Independent Fruit & Produce Co.*, 919 F.2d 1343, 1349 (8th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 59, 116 L.Ed.2d 35 (1991). Whether such an agreement is ambiguous is a question of law that we review *de novo. Id.* at 1350. We conclude that the agreements at issue in this case are unambiguous. "Casual employee" is clearly defined by the CBAs, and Hartlage fully complied with that definition when it hired Taylor, Vorwold, and Vail as casual employees.

This case is analogous to our decision in *Indiana State Council of Roofers v. Adams Roofing Co.*, 753 F.2d 561 (7th Cir. 1985). There, a pension fund sued four employers to recover for alleged section 515 violations. The pension fund claimed that the employers violated ERISA when they failed to make contributions on behalf of employees who were designated as "helpers." *Id.* at 562. A trust agreement required that each employer pay into the pension fund on behalf of any employee whose wage rates were established by the collective bargaining agreements between the employers and the employees' union. The collective bargaining agreements defined the wage rates of "journeymen" and "apprentices," but not helpers. *Id.* The

pension fund asserted that the employers were obligated to make contributions to the fund on behalf of the helpers because the helpers performed a particular type of work—bargaining unit work. *Id.*

In *Adams Roofing*, we looked initially to the terms of the trust agreement to determine whether the employers were liable for such contributions. *Id.* at 563–64. We noted that "the trust agreement unambiguously obligate[d] defendants to contribute to the fund only on behalf of employees whose wages [were] set forth in the collective bargaining agreement[s]." *Id.* at 564. We therefore examined the collective bargaining agreements and concluded that the employers did not violate section 515 because the collective bargaining agreements did not establish the helpers' wages. *Id.*

Similarly, in this case, the trust agreements required that Hartlage make contributions to the Funds as provided in the CBAs. The CBAs provided that Hartlage need not make contributions on behalf of casual employees. In hiring and employing Taylor, Vorwold, and Vail, Hartlage fulfilled all of the CBAs' requirements for casual employees: Hartlage hired the three to replace absent, sick, or injured regular seniority employees; Hartlage gave them notice of their status as casual employees; and Hartlage could have employed them indefinitely. Like the employers in *Adams Roofing*, Hartlage was not required by its trust agreements and the CBAs to make contributions on behalf of the disputed workers.

The Funds cite *Central States v. Independent Fruit & Produce Co.*, 919 F.2d 1343 (8th Cir.1990), to support their claim that the district court erred when it failed to give the phrase "casual employee" its plain meaning. In *Independent Fruit*, a pension fund sued more than twenty produce wholesalers pursuant to ERISA sections 502 and 515 to collect allegedly delinquent pension fund contributions. *Id.* at 1345. The employers in that case had refused to make pension fund contributions for employees they designated as "casuals." As in this case, "casuals" were a category of employees for whom contribu-

tions were not required by the collective bargaining agreements. *Id.* The Eighth Circuit looked to the dictionary definition of "casual employment" for guidance. The Funds argue that we should do the same.

The agreements at issue here, however, make this case distinguishable from *Independent Fruit.* The *Independent Fruit* court observed that the employers and union had attached an unusual meaning to the term "casual employee," and that the pension fund "could not ascertain their meaning from the documents." *Id.* at 1352. The court refused to rely on the private, unexpressed intent of the parties and instead looked to the plain meaning of the words of the collective bargaining agreements. The court concluded that "[g]iven the purpose of written contracts and section 515 of ERISA, the parties to a collective bargaining agreement are bound by the terms of their agreement, regardless of their undisclosed intent." *Id.* at 1353. For this reason, the court looked to the dictionary definition of "casual employee" and applied that meaning to the facts of the case. In so doing, the court reversed the district court's decision in favor of the defendant employers.

The CBAs in this case—unlike the collective bargaining agreements at issue in *Independent Fruit* —clearly express the parties' intent. Hartlage and the Union openly expressed their agreed understanding of the phrase "casual employee" in the CBAs. We have no doubt that the Funds could have easily ascertained the meaning the parties attributed to that phrase. We need not, therefore, look to a dictionary definition for guidance as the *Independent Fruit* court did. Rather, as required by section 515, we enforce the terms of the CBAs and conclude that Taylor, Vorwold, and Vail were casual employees. Consequently, Hartlage did not violate section

515 when it failed to make contributions to the Funds on their behalf.

## C. ERISA's Minimum Participation Standards

The Funds finally contend that the trust agreements' requirement that Hartlage make contributions in accordance with "applicable law" requires Hartlage to comply with ERISA's minimum participation standards. The Funds argue that Hartlage can comply only by making contributions for Taylor, Vorwold, and Vail. Appellants' Brief at 17.

ERISA's minimum participation standards do not allow pension plans to condition participation in the plan upon an employee's completion of more than a year of service with the employer. 29 U.S.C. § 1052(a)(1)(A) ("section 202(a)(1)(A)").[3] ERISA defines a year of service as "a 12-month period during which the employee has not less than 1,000 hours of service." 29 U.S.C. § 1052(a)(3)(A). The Funds argue that these sections prohibit pension plans from excluding employees in excess of the minimum requirements of section 202(a)(1)(A). The Funds contend that Hartlage's treatment of Taylor, Vorwold, and Vail violates section 202(a)(1)(A) because they worked longer than 12-months. We disagree.

First of all, the Funds acknowledge that the exclusion of "truly 'casual' employees *from participation in the Fund does not violate ERISA section 202(a)(1)(A)."* Appellants' Brief at 20–21. The Funds contend that Taylor, Vorwold, and Vail are not casual employees because casual employees fill in on an on-call basis for absent employees. As we have pointed out, however, the CBAs define casual employees as persons who may be used *"indefinitely."* We need not, then, look to some "plain" or "ordinary" meaning of casual employee because the parties to the CBAs agreed to a

---

**3.** Section 202(a)(1)(A) in full provides:

No pension plan may require, as a condition of participation in the plan, that an employee complete a period of service with the employer or employers maintaining the plan extending beyond the later of the following dates—

(i) the date on which the employee attains the age of 21; or
(ii) the date on which he completes 1 year of service.

29 U.S.C. § 1052(a)(1)(A).

specific definition of that term. *See Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 622 (3d Cir.1984) (1,000 hour requirement of ERISA section 202 does not supercede contracts in which employer agreed to contribute pursuant to collective bargaining agreements). The employees are excluded because of their status as casual employees, not because of their age or time of service. Therefore, Hartlage did not violate ERISA's minimum participation standards when it failed to make contributions on behalf of Taylor, Vorwold, and Vail.

### III.

ERISA section 515 requires that when employers make valid contracts, they stick to them. Hartlage entered into trust agreements with the Funds and the CBAs with the Union. The agreements clearly defined the rights and obligations of all concerned parties. It is not our job to nullify the intent of the parties to such agreements in the absence of anything that is "inconsistent with law." 29 U.S.C. § 1145. There is nothing inconsistent with any law about either the trust agreements or the CBAs. As we must, we strictly enforce the terms of those agreements. *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186, 1192 (7th Cir.1989). Hartlage fully complied with all of its agreements when it hired Taylor, Vorwold, and Vail as casual employees and refused to make contributions on their behalf. Accordingly, the district court's decision to grant Hartlage's motion for summary judgment is

AFFIRMED.