1298 (6th Cir. 1991). As noted, the district court determined that until the 1995 audit, Central States did not know of Brown-Graves's unusual definition of "casual drivers." Furthermore, after Central States became aware of the problem, it notified Brown-Graves of its claim for contributions. The elements of laches and estoppel are not met. As a result, these doctrines do not bar Central States's claims for pension contributions on behalf of employees classified as "casual drivers."

AFFIRMED.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0097P (6th Cir.)
File Name: 00a0097p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

BROWN-GRAVES COMPANY,
          *Plaintiff-Appellant,*

          *v.*                              No. 99-3039

CENTRAL STATES,
SOUTHEAST AND SOUTHWEST
AREAS PENSION FUND and
HOWARD MCDOUGALL,
Trustee,
          *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 96-02300—David D. Dowd, Jr., District Judge.

Submitted: December 13, 1999

Decided and Filed: March 20, 2000

Before: MERRITT and SILER, Circuit Judges;
          BECKWITH, District Judge.[*]

_____

[*]The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

---

**COUNSEL**

---

**ON BRIEF:**    Timothy M. Bittel, David H. Shaffer, JOONDEPH, SHAFFER & BITTEL, Akron, Ohio, for Appellant.    Albert M. Madden, CENTRAL STATES, SOUTHEAST & SOUTHWEST AREAS HEALTH & WELFARE & PENSION FUNDS, Des Plaines, Illinois, for Appellees.

---

**OPINION**

---

SILER, Circuit Judge.  Plaintiff, Brown-Graves Company ("Brown-Graves"), appeals the judgment and award of attorneys' fees for defendants, Central States Southeast and Southwest Areas Pension Fund ("Central States"), in this Employee Retirement Income Security Act ("ERISA") case in which the district court determined that Brown-Graves was obligated to make contributions to  Central States. For the reasons discussed below, we AFFIRM the district court's decision.

**BACKGROUND**

Brown-Graves employed truck drivers pursuant to a series of three-year contracts negotiated with Local Union 348 of the International Brotherhood of Teamsters ("Local 348"). This appeal concerns whether Brown-Graves was obligated by the terms of these contracts to pay pension contributions to Central States on behalf of eight employees who were classified as "casual drivers."

The Collective Bargaining Agreement ("CBA") in effect from June 23, 1983, to June 23, 1986, makes no mention of a "casual driver" classification.  During this time frame, Brown-Graves employed casual drivers under an informal

employees."  As the Eighth Circuit has done, we shall apply the ordinary meaning to the term "casual employee" where no other definition is contained in the CBAs and Central States had no reason to know of the unusual definition used by Brown-Graves.  Consequently, the district court was correct in ruling that Brown-Graves was contractually obligated to make contributions on behalf of employees classified as "casual drivers."

II.  DEFENSE OF LACHES AND ESTOPPEL

Laches consists of two elements: (1) unreasonable delay in asserting one's rights; and (2) a resulting prejudice to the defending party.  *Meade v. Pension Appeals and Review Committee,* 966 F.2d 190, 195 (6th Cir. 1992).  In the present case, there was no unreasonable delay.  As the district court stated, Central States did not know of the problem with Brown-Graves's unusual interpretation of the term "casual drivers" prior to the 1995 audit.  Immediately after the audit, Central States notified Brown-Graves of its claim for contributions.

There was also no resulting prejudice to Brown-Graves. Brown-Graves states that if it had been notified of Central States's claim sooner it could have "taken steps to avoid being sued for the disputed contributions."  However, the only "steps" Brown-Graves could have taken would have been to make the contributions.  Consequently, the laches defense fails.

The elements of estoppel are: (1) conduct or language amounting to a representation of fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on such that the party asserting the estoppel has the right to believe it was so intended; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must detrimentally and justifiably rely on the representation. *Armistead v. Vernitron Corp.,* 944 F.2d 1287,

arrangement with Local 348. The "casual driver" classification first appeared in the parties' CBA covering the period between June 23, 1986, and June 23, 1989. The agreement stated that casual drivers were to be hired "without any fringe benefits." Successive CBAs entered into by the parties in 1989 and 1992 contained nearly identical language concerning the casual driver classification.

In 1995, Central States conducted an audit of Brown-Graves's payroll records for the period of December 30, 1990, through December 25, 1993, to determine whether Brown-Graves was making pension fund contributions under the CBA. Following the audit, Central States demanded Brown-Graves pay more than $30,000 in contributions and interest allegedly owed on behalf of certain employees classified as "casual drivers." In 1996, Brown-Graves commenced suit seeking a declaratory judgment that there was no contractual obligation to make pension contributions on behalf of the casual drivers. Central States filed a counterclaim for recovery of the disputed contributions plus interest, costs and attorneys' fees. Brown-Graves's denial of an obligation to contribute to the pension fund from 1986 forward was based on the provision in the CBA stating that casual drivers will be hired "without any fringe benefits."

The district court ruled that Brown-Graves owed $60,251.94 in pension contributions and interest for employees hired prior to June 23, 1986. It further ruled that Brown-Graves owed $47,430.27 in contributions and interest for the employees hired after June 23, 1986, because those individuals did not qualify as "casual employees" under the ordinary dictionary definition of that term.

## DISCUSSION

### I. EMPLOYER CONTRIBUTIONS

The contracts at issue here did not define the term "casual driver." Therefore, this court must decide what test should be applied to determine whether an employee is within the casual

Given the purpose of written contracts and section 515 of ERISA, the parties to a collective bargaining agreement are bound by the terms of their agreement, regardless of their undisclosed intent. By so holding, we merely reaffirm a basic rule of contract interpretation. "A signatory to a contract is bound by its ordinary meaning even if he gave it an idiosyncratic one; private intent counts only if it is conveyed to the other party and shared." [citation omitted]. Section 515 of ERISA emphasizes that this is especially true as to third parties obligated to administer a pension fund according to the terms of written agreements.

*Id*. at 1353.

*Hartlage Truck Service, Inc.* is distinguishable from the present case and *Independent Fruit*. In *Hartlage,* the court stated:

The CBAs in this case--unlike the collective bargaining agreements at issue in *Independent Fruit*--clearly express the parties' intent. Hartlage and the Union openly expressed their agreed understanding of the phrase "casual employee" in the CBAs. We have no doubt that the Funds could have easily ascertained the meaning the parties attributed to that phrase. We need not, therefore, look to a dictionary definition for guidance as the *Independent Fruit* court did. Rather, as required by section 515, we enforce the terms of the CBAs and conclude that Taylor, Vorwold, and Vail were casual employees.

*Hartlage Truck Service, Inc.*, 991 F.2d at 1362. The court determined that as the parties agreed to a specific definition of "casual" the ordinary definition was not appropriate.

As in *Independent Fruit* and unlike *Hartlage Truck Service, Inc.*, the CBAs involved in the present case do not define "casual." Furthermore, Central States had no notice of the unusual meaning Brown-Graves attached to the term "casual

classification.  Section 515 of ERISA, 29 U.S.C. § 1145, governs employer contributions to multi-employer pension plans:

> Every employer who is obligated to make contributions to a multi-employer pension plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreements.

Thus, employers are required to make contributions according to the terms of their contracts. *Central States, Southeast and Southwest Areas Pension Fund v. Hartlage Truck Service, Inc.* 991 F.2d 1357, 1360 (7th Cir. 1993).

The CBA covering 1983-1986 made no mention of "casual drivers."  It provided that all new employees "shall be considered as probationary employees for a period of ninety (90) calendar days" and that new drivers were not to become eligible under the plan for thirty days.  Brown-Graves claims it had an informal agreement with Local 348 pertaining to casuals. Nevertheless, the 1983-1986 CBA was unambiguous and must be interpreted without any regard to parol evidence. The subsequent CBAs did contain "casual driver" language, but did not define the term.

Since June 23, 1986, Brown-Graves classified each new driver as a "casual driver."  The language in the post-1986 CBAs excluding casual drivers from pension benefits was unambiguous.  However, it did not provide notice to Central States that Brown-Graves gave the term "casual employee" an unusual meaning which allowed it to call all new employees "casual" for indefinite periods of time.  Central States would not have accepted Brown-Graves's post-1986 CBAs had it known that Brown-Graves planned to call every newly hired employee a "casual" for periods up to four years so it could avoid pension payments.  The district court stated that:

While Central States noted that the post-1986 CBAs excluded "casual employees" from participation, Central States accepted the CBAs because there was no indication in the CBAs that the employer had assigned a meaning to the term "casual employee" other than the standard definition of short term, temporary, sporadic employees which would not violate Central States' rules.

The Sixth Circuit has not addressed the issue of whether, in the absence of a definition in the contract, the ordinary dictionary definition or some other definition should apply to determine whether or not an employee is  "casual."  The Seventh and Eighth Circuits have addressed the issue.  The Eighth Circuit has concluded that an employer could not avoid contributions to the pension fund for "casual" employees by making an agreement with the union to attach a different meaning from its plain meaning.  *See Central States, Southeast and Southwest Areas Pension Fund v. Independent Fruit & Produce Co.,* 919 F.2d 1343 (8th Cir. 1990).  The Seventh Circuit reached the opposite conclusion. It held that an employer is required to make contributions to pension plans only on behalf of those employees as indicated in the CBAs, and if casual employees are excluded from benefits in the CBA, then any employee so designated is excluded from benefit contributions.  *See Central States, Southeast and Southwest Areas Pension Fund v. Hartlage Truck Service, Inc.*, 991 F.2d 1357, 1360 (7th Cir. 1993).

In *Independent Fruit*, the employers had negotiated a CBA which provided that casuals would not be eligible for pension contributions, but it did not define casuals.  Central States conducted an audit and determined the employer owed contributions for several employees because the number of hours they worked indicated that they were not casual employees.  The Eighth Circuit held that the CBAs involved were not ambiguous and there was nothing in the CBAs suggesting anything other than the ordinary dictionary definition of casual was intended.  *Independent Fruit,* 919 F.2d at 1352.  The court stated that: