

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-31-1995

# Agathos v Motel

Precedential or Non-Precedential:

Docket 94-5382

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Agathos v Motel" (1995). *1995 Decisions.* Paper 89.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/89

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-5382


JOHN AGATHOS; and LEONARD DEMARSICO,
as Trustees of the Local 4-69 Welfare
Fund and the Local 4-69 Pension Fund and
Local 69, Hotel Employees and Restaurant
Employees International Union, by its
President, John Agathos

Appellants

v.

STARLITE MOTEL


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 89-cv-02429)


Argued:  February 17, 1995

BEFORE:  STAPLETON and COWEN, Circuit Judges
HUYETT, District Judge*

(Filed March 31, 1995)


Diana L.S. Peters
Gerald M. Feder (argued)
Feder & Associates, P.C.
1350 Connecticut Avenue, N.W.
Suite 600
Washington, D.C.  20036

    Counsel for Appellants
    John Agathos and Leonard DeMarsico

John A. Craner (argued)
Craner, Nelson, Satkin & Scheer
320 Park Avenue
P.O. Box 367
Scotch Plains, NJ  07076

        Counsel for Appellee
        Starlite Motel

OPINION OF THE COURT

Cowen, <u>Circuit Judge</u>:

John Agathos and Leonard DeMarsico, plaintiff trustees (the "Trustees") of the jointly administered Local 4-69 Welfare Fund (the "Welfare Fund") and the Local 4-69 Pension Fund (the "Pension Fund") appeal from an order of the district court that granted judgment in favor of defendant Starlite Motel ("Starlite") on claims under a collective bargaining agreement.[1] In essence, the Trustees argue that the district court erred in: (1) determining that the Welfare Fund was not legally entitled to recover benefits paid to an ineligible employee in reliance on false statements made by Starlite; (2) concluding that only current Starlite employees could have colorable claims against the Pension Fund for benefits; (3) concluding that two current

---

[1]. In the original complaint in this matter, Local 69 (the "Union") also sought union dues on behalf of Starlite's unreported employees.  The Union is not pursuing its claims in this appeal.

employees do not have colorable claims for pension benefits; and (4) concluding that a one year time limit for filing precludes claims for welfare benefits. Because the district court correctly determined that the Welfare Fund was not entitled to recover benefits paid to the ineligible employee, we will affirm the district court's order in part. Nevertheless, because we conclude that the district court failed to make factual findings and conclusions of law sufficient to determine whether the past and present employees of Starlite have colorable claims for pension and welfare benefits, we will reverse and remand on the remaining issues raised by the Trustees.

## I.

The Local 4-69 Welfare Fund and the Local 4-69 Pension Fund (collectively "the Funds") are multiemployer employee benefit plans that were established in accordance with Section 302(c)(5) of the Labor-Management Relations Act of 1947 (as amended), and that are within the purview of the Employee Retirement Income Security Act of 1974 (as amended) ("ERISA"). Pursuant to ERISA and the Labor-Management Relations Act, contributions that employers owe under collective bargaining agreements are pooled to provide the benefits for all the participants and beneficiaries of the Funds.

On May 31, 1979, Starlite entered into a collective bargaining agreement that required it to make contributions to the Welfare and Pension Funds on behalf of its employees. Zuzanna Podkowa ("Podkowa") was an employee of Starlite until

June 30, 1986. At that time, she terminated her employment. After leaving Starlite, Podkowa submitted medical claims to the Welfare Fund even though she was no longer eligible for such benefits. The Welfare Fund paid her $11,203.67 in benefits relying on a false report from Starlite that Podkowa was still employed.

Because of information disclosed as the result of Podkowa's claim, the Funds sought an audit of Starlite's books. Starlite refused the audit and the Funds sued. An audit of Starlite's records covering the period from January 1, 1984 to December 31, 1990 conducted during discovery demonstrated that Starlite failed to report a number of employees who were covered by the collective bargaining agreement. In addition, Starlite failed to make contributions to the Funds on behalf of these employees. The contributions due from Starlite totalled $52,665.00 for the Welfare Fund and $14,756.00 for the Pension Fund.

Without taking further evidence, the district court heard legal arguments on the above stipulated facts. The court concluded that the payments made to Podkowa were made as a result of the failure of the Funds to conduct even the most minimal policing of Starlite's account, and denied recovery. Agathos v. Starlite Motel, No. 89-2429, slip op. at 11 (D.N.J. Dec. 20, 1991). Concerning the unreported employees, the district court concluded that the Funds suffered no damages because the unreported employees were never covered by the Funds and thus could not have made any claims for pension or welfare benefits. Id. at 8-9. An appeal to this Court followed.

On appeal, we vacated the district court's judgment and remanded for further proceedings. Agathos v. Starlite Motel, 977 F.2d 1500, 1510 (3d Cir. 1992). We determined that the district court failed to make clear the precise legal principles it considered in reaching its decision concerning the benefits paid to Podkowa. Id. at 1508. Accordingly, we remanded to the district court for it to decide whether the Funds could meet their burden of proving either fraud or breach of contract on the part of Starlite. Id.

With respect to the claims for Welfare and Pension Fund contribution, we determined that we were unable to discern from the record which employees, if any, presently could bring a valid claim for benefits. Id. at 1507. We explained that if the employees cannot assert such claims, then a judgment for the Funds would compel Starlite to contribute to plans from which its employees obtained no benefits in the past and are powerless to derive any benefits in the future, a result that we described as a "pure windfall." Id. We therefore directed the district court to conduct an evidentiary hearing to determine which, if any, unreported employees currently have colorable claims against the Funds for benefits. Id. Further, we explicitly placed the burden of proof on Starlite to demonstrate that particular employees no longer had colorable claims for benefits if Starlite wished to avoid making contributions on behalf of those employees. Id. at 1507-08.

The district court on remand held an evidentiary hearing. At the hearing, the Trustees of the Welfare Fund admitted into

evidence a written document attesting to the fact that on December 2, 1992 (after our first decision in this matter), the Trustees unanimously adopted a resolution to waive the time limits on submission of medical claims to the Welfare Fund for individuals for whom contributions should have been made by Starlite. According to the Trustees, this waiver allows each of these employees to submit claims for welfare benefits without regard to any previously imposed time bar.

The district court rendered its decision following this hearing in a three page order. The court determined that the Funds had not met their burden of proof in proving fraud or breach of contract with regard to their claim for monies paid to Podkowa. According to the court, the Funds had not proven that they "were justified in relying" on Starlite's misrepresentation to their detriment and the Funds had not proven that the damages they sought flowed foreseeably from Starlite's breach. Agathos v. Starlite Motel, No. 89-2429, slip op. at 3 (D.N.J. May 27, 1994). The court again cited the failure of the Funds to police the Starlite account as the source of the damages at issue. Id.

With respect to the claims for contribution, the district court stated that:

> [H]aving determined that only two current employees of Starlite -- Luba Siemienuk and Mieczslaw Zielinski -- were also employed by Starlite during the period for which contributions are sought, and it having been represented to the court that neither employee presently could bring a valid claim for benefits accruing during the period for which contributions are now sought, and, indeed, that neither employee even has a claim for either welfare or pension benefits and, thus, as a matter of law any judgment for the Funds under the circumstances would be a pure

windfall . . . judgment will be entered in favor of defendant.

Id. at 2-3 (internal quotation marks and citations omitted). The district court also stated in a footnote that:

> There are no medical bills to submit, there are no claims for pensions because pensions have not vested, and, in any event, claims must be and were not submitted within one year from the date the claim was first incurred. Def. Exh. 4, 8. While, following the Court of Appeals' decision and based on the "tenor" of that decision, the Funds purported to waive the time limits for the submission of medical claims during the period for which contributions were sought (thus implicitly requiring those contributions to be made in an attempt to back door both this court and the Court of Appeals, see Def. Exh. 5), the undisputed fact remains that only Ms. Siemienuk and Mr. Zielinski continue to work for Starlite and only they would qualify for benefits if they had colorable claims, which they do not.

Id. at 2 n.2. Accordingly, the district court entered judgment in favor of Starlite on May 27, 1994. This appeal followed.

## II.

The district court had jurisdiction in this matter by virtue of Section 502(e)(1) of ERISA, codified at 29 U.S.C. § 1132(e)(1). We exercise jurisdiction in this matter pursuant to 28 U.S.C. § 1291 following the remand that we directed and the final judgment entered by the district court.

## III.

The Trustees argue that the district court erred in denying the Welfare Fund recovery for the benefits it paid to Podkowa. According to the Trustees, Starlite committed fraud and breached

its contractual obligations by misrepresenting that Podkowa was a current employee at the time she made her claim for welfare benefits. Further, the Trustees assert that the district court failed to take into account the realities in which multiemployer plans operate with respect to their abilities to police employer's accounts. We are unpersuaded by the Trustees' arguments.

In our previous decision, we outlined the applicable legal principles for the district court to consider in assessing whether the Trustees could meet their burden of proving fraud or breach of contract. Agathos, 977 F.2d at 1508. We explained that under general principles of tort law, the elements of fraud are: (1) a material factual misrepresentation; (2) made with knowledge or belief of its falsity; (3) with the intention that the other party rely thereon; (4) resulting in justifiable reliance to that party to his detriment. Id. (citing Restatement (Second) of Torts §§ 525-26 (1977)). Further, we explained that for the Funds to recover for breach of the collective bargaining agreement, the Funds had to show that: (1) Starlite had a contractual obligation not to make reports or to remit contributions on behalf of individuals no longer in Starlite's employ; (2) Starlite breached this obligation; and (3) the damages sought by the Funds foreseeably flowed from the breach. Id. at 1509. We directed the district court to make clear the precise legal principles it considered in reaching its decision. Id. at 1508.

Upon remand, the district court did make clear the precise legal principles it relied upon in denying the Welfare Fund[2] recovery for the benefits it paid to Podkowa. With respect to the fraud claim, the district court found that while the Welfare Fund proved that Starlite made a material factual misrepresentation with knowledge of its falsity and with the intent that the Fund would rely on it, the Fund did not prove that it was "justified in relying on that misrepresentation" because the Fund "`failed to engage in even the most minimal policing of the Starlite account.'" Agathos, No. 89-2429, slip op. at 3 (D.N.J. May 27, 1994) (quoting Agathos, 977 F.2d at 1508). According to the district court, it was the Welfare Fund's inaction that caused it to pay money to Podkowa that otherwise would not have been paid. Id. Because the district court determined that the Welfare Fund failed to meet its burden of proof on the element of justifiable reliance, we find that the court satisfied its obligation to articulate the precise legal principle under which it denied the Welfare Fund recovery.

Similarly, with respect to the breach of contract claim, the district court concluded that while the Welfare Fund proved that Starlite breached its contractual obligation not to make reports on behalf of individuals no longer in its employ, the Fund did

_____

[2]. In its decision concerning the benefits paid to Podkowa, the district court consistently referred to "the Funds" as the entity with the dispute and burden of proof. Agathos, No. 89-2429, slip op. at 3 (D.N.J. May 27, 1994). Since the benefits paid to Podkowa were paid pursuant to the policies of the Welfare Fund, it is more precise to refer specifically to that entity rather than to "the Funds" in general when discussing this claim.

not prove that the damages it sought flowed from that breach rather than from the Welfare Fund's failure even minimally to police the Starlite account.  Id.  Since the district court determined that the Fund failed to satisfy an essential element of a breach of contract claim -- that the damages flow "foreseeably from the breach" --  the court also fulfilled its obligation to articulate the precise legal principle by which it denied the Fund recovery on that claim.  Accordingly, we will affirm the district court's decision to deny the Welfare Fund recovery for benefits paid to Podkowa.

The Trustees assert that the district court failed to take into account the realities within which multiemployer plans operate in determining that the Welfare Fund did not adequately police the Starlite account.[3]  According to the Trustees, most multiemployer plans are forced to operate under a self-reporting system in which the plans must rely on contributing employers to provide information as to which employees are working at any given time.  While we are sympathetic to the problems such plans face in obtaining accurate information, we noted in our previous opinion that there was ample record support for the district court's finding that the Funds failed to engage in even the most minimal policing of the Starlite account.  Agathos, 977 F.2d at 1508.  Under such circumstances, we cannot disagree with the

---

[3].  The Trustees also argue that the district court's ruling is inconsistent with ERISA and applicable precedent.  We find nothing in the language of ERISA or in the precedents that the Trustees cite that creates an inconsistency.

district court's conclusion that the damages at issue flowed from the Welfare Fund's failure to police adequately the Starlite account, rather than from the misrepresentation by Starlite. Moreover, we believe that such an argument is an attempt by the Trustees to relitigate an issue already passed upon by the district court and implicitly affirmed by our previous decision in this matter. Accordingly, we are unpersuaded by the Trustees' arguments and we will uphold the decision of the district court.

IV.

The Trustees' next argument is that the district court erred by concluding that only current Starlite employees could have colorable claims against the Pension Fund for benefits. According to the Trustees, the district court erroneously interpreted our previous opinion to preclude colorable claims against Pension Fund benefits by employees who worked for Starlite in the past. This error, the Trustees argue, improperly led the district court to limit its evidentiary hearing to a consideration of only those employees who had both worked for Starlite during the period for which contribution is sought[4] and who are presently still working for Starlite. The Trustees assert that the district court erred by failing to consider

_____

[4]. The "period for which contribution is sought" is defined by the audit of Starlite's records conducted during discovery. The audit covered the period from January 1, 1984 to December 31, 1990. Employees who worked for Starlite during the period for which contribution is sought, but who are not currently working for Starlite, are sometimes referred to in this opinion as "past employees" for purposes of convenience.

employees who had earned credits toward pension vesting for time worked during the period for which contribution is sought, but who have now moved on to other employment.

The district court's three page decision in this matter does not provide an adequate basis to defeat the Trustees' argument. The district court's opinion states that "having determined that only two current employees of Starlite . . . were also employed by Starlite during the period for which contributions were sought, and it having been represented to the court that neither employee `presently could bring a valid claim for benefits,'" any judgment for the Funds "`would be a pure windfall.'" Agathos, No. 89-2429, slip op. at 2 (D.N.J. May 27, 1994) (citing Agathos, 977 F.2d at 1507). This statement fuels the Trustees' argument that the district court limited the evidentiary hearing to present employees. Even more importantly, however, the district court simply made no findings concerning whether any past employees currently have a colorable claim for pension benefits. Accordingly, we must determine whether the district court erred by failing to make such findings.

In our previous opinion, we explained that whether employees presently have a colorable claim for benefits depends on whether they would be able to submit claims against fully back-dated coverage once Starlite makes the requested contributions. Agathos, 977 F.2d at 1508. We further explained that:

> An employee has no colorable claim <u>if a plan would not properly entertain the claim because</u> it is time-barred, <u>the employee has ceased working for Starlite and therefore no longer qualifies</u>, or federal labor law precludes recovery.

> If, however, a Fund would be required to honor an employee's claim, then Starlite must contribute for that employee regardless of whether he or she in fact has a meritorious claim.

Id. (emphasis added). Concededly, one possible reading of this language in our previous opinion is that if an employee has ceased working for Starlite, the employee no longer has a colorable claim for any benefits. Such a reading, however, does not give full effect to all the words in the above-quoted passage, and is certainly contrary to this Court's intentions.

The key phrase in the quoted passage that defines when an employee no longer has a colorable claim is, "if the plan would not properly entertain the claim." Our list of possible scenarios when the plan might not entertain such claims, such as when a claim is time-barred, when an employee has ceased working for Starlite, or when Federal labor law precludes recovery, was not intended to be applied by mere incantation. This principle is made clear by our final sentence which states that "if, however, a Fund would be required to honor an employee's claim, then Starlite must contribute for that employee regardless of whether he or she in fact has a meritorious claim."

The error in an interpretation which prevents consideration of past employees who may have claims for pension[5] benefits is aptly pointed out by the Trustees' argument. As the Trustees

---

[5]. Further supporting our reasoning in this case is the fact that in the paragraph at issue in our original decision we did not distinguish between the Pension Fund and the Welfare Fund. Accordingly, we were not focusing on the intricacies of each specific Fund's requirements for bringing claims for benefits based on past employment.

correctly state, there may be employees who worked for Starlite during the period for which contribution is sought, who are not presently working for Starlite, but who nevertheless earned credit toward pension vesting. It is undisputed that under the terms of the Pension Plan, an employee is required to work for ten years before the employee's pension vests. It is also undisputed that if an employee ceases working for Starlite but obtains covered employment[6] with another employer, that employee's years of service at Starlite will be counted toward the employee's retirement benefits unless he or she incurs a break in service that is not cured under the rules of the plan and/or under ERISA. Thus, there may well be employees who worked for Starlite in the past, who are not working for Starlite now, but who moved on to other covered employment. Such employees would have claims for benefits once they have completed the requisite number of years of service. Accordingly, an interpretation of our previous opinion which does not provide for consideration of these past employees is erroneous.[7]

---

[6]. "Covered employment" is defined as employment with employers who: (1) have been accepted for participation in the plan by the Trustees; (2) have collective bargaining agreements requiring contributions to be made to the Fund; and (3) have become a party to the pension trust agreement. Local No. 4-69 Pension Fund of the Hotel & Restaurant Employees & Bartenders Union; App. at 136(a). Thus, under the plan, an employee is able to move from one participating employer to another without loss of years earned toward vesting.

[7]. In arguing that the analysis of colorable claims for pension benefits should not be limited to current employees, the Trustees referenced past employees who continued in covered employment after leaving Starlite. We perceive no reason why past employees

Starlite countered this position at oral argument by suggesting that all past employees have incurred a break in service.[8]  Because the district court made no findings concerning past employees, we are unable to determine from this record whether these past employees have incurred a break in service. We do point out, however, that our previous opinion explicitly placed the burden on Starlite to prove which, if any, employees do not have colorable claims against the Pension Fund in order to avoid making contributions for those employees.  If Starlite is unable to fulfill its burden, it must make the requisite contributions.[9]  Accordingly, we will again reverse and remand this case to the district court for an evidentiary hearing to determine which, if any, unreported past Starlite employees currently have colorable claims for benefits.  At this hearing, the district court must focus on the specific reasons why the past employees do not have a colorable claim for benefits and must make appropriate findings as to those employees that Starlite has demonstrated do not have a colorable claim for benefits.

(..continued)
who worked in covered employment before their tenure with Starlite could not also have colorable claims for benefits.

[8].  A "break in service" is defined by the plan and occurs when an employee fails to work a requisite number of hours in two consecutive years in "covered employment."  App. at 137a.

[9].  Starlite argues that the Trustees have the burden of proving that its past employees have not incurred a break in service. Appellee's Brief at 19 n.7.  We are puzzled by Starlite's position since our previous opinion was explicit on the question of who bears the burden of proof and it makes clear that the burden falls on Starlite.  Agathos, 977 F.2d at 1507-08.

V.

We next address the Trustees' claim that the district court erred in determining that the two current employees who also worked for Starlite during the period for which contribution is sought do not have colorable claims for pension benefits. According to the Trustees, the district court confused a colorable claim with a present claim for vested pension benefits in evaluating whether Starlite should make contributions on behalf of these employees. The Trustees once again press their claim that while these employees have not yet worked enough years to have vested pensions, they may combine past years of service with future years of service and therefore they have potential claims against the Pension Fund.

We review the district court's findings of fact for clear error. Epstein Family Partnership v. Kmart Corp., 13 F.3d 762, 765-66 (3d Cir. 1994). We exercise plenary review over the district court's application of the law to those facts. Id. at 766. The district court found that Luba Siemienuk and Mieczslaw Zielinski, the two current employees who also worked for Starlite during the period for which contribution is sought, do not have colorable claims for pension benefits. Agathos, No. 89-24-29, slip op. at 2 n.2 (D.N.J. May 27, 1994). According to the district court, there are no claims for pensions because pensions have not vested. Id.

While we accept the district court's factual conclusion that no pensions have vested, we are unable to find that this fact is

dispositive of the relevant issue.  As the Trustees point out, a colorable claim for pension benefits does not depend on whether the employees' pensions have vested.  These employees may not yet have worked the requisite number of years for vesting, but the pension plan permits them to combine the time they have worked in the past with additional years worked in the future in order to complete the requisite number of years (assuming they have incurred no break in service).[10]

Once again, Starlite argues in its brief that these two employees have incurred a break in service.  Appellee's Brief at 14.  Unfortunately, there is nothing in the district court's factual findings to support this conclusion.  Starlite may be correct, but sitting as an appellate court we are not in a position to make findings of fact.  See, e.g., Gilgillan v. City of Philadelphia, 637 F.2d 924, 931 n.6 (3d Cir. 1980), cert. denied, 451 U.S. 987, 101 S. Ct. 2322 (1981).  Accordingly, we will also reverse and remand on the question of whether Starlite is liable for contributions to the Pension Fund on behalf of Luba Siemienuk and Mieczslaw Zielinski.  On remand, the district court

---

[10].  These employees would have claims for "credited service." We have previously held that a claim for credited service does not give rise to a "colorable claim" to vested benefits.  Shawley v. Bethlehem Steel Corp., 989 F.2d 652, 656 (3d Cir. 1993).  In Shawley, we said "neither plaintiffs' credited service . . . nor the accrued benefit to which it gives rise is a `vested' benefit under [a pension plan] that would grant participant status" and give the employees standing to sue the pension plan under ERISA. Id.  Shawley does not preclude the existence of colorable claims in this case because the issue here is not whether former employees may currently sue the Pension Fund, but whether a future liability is sufficiently likely to justify requiring the employer to contribute to the Fund.

must make a finding as to whether these employees incurred a break in service or another deficiency that would prevent them from having colorable claims for pension benefits. If no such break in service or other deficiency exists, Starlite must make the requisite contributions on behalf of these employees.

VI.

The Trustees' final claim is that the district court erred by concluding that no one who worked for Starlite during the period for which contribution is sought has a colorable claim for welfare benefits. According to the Trustees, the district court erroneously concluded that a one year time bar for submission of claims against the Welfare Fund could not be waived and barred all subsequent claims.[11] The Trustees assert that they validly waived the time bar for submission of claims against the Welfare Fund in order to allow those employees who were covered for medical benefits, but who never received notice of such coverage, to submit claims.

---

[11]. Counsel for the Trustees points out in its brief that according to the Summary Plan Description of the Local 4-69 Welfare Fund, a document inadvertently not offered into evidence at the evidentiary hearing, the actual time for submitting a claim for benefits is 90 days from the date on which a loss was first sustained. Appellants' Brief at 35. The Trustees explain that the one year time bar derives solely from a letter from the Fund's former counsel which was admitted into evidence. We are not inclined to comment on the appropriate time period that governs such claims given the fact that the Summary Plan Description was not offered into evidence. Nevertheless, the difference between the one year and 90 day rules does not appear relevant to the claim of the appellants that the district court erred in determining that the Trustees could not waive the time limitation.

Our review over questions of law such as the validity of the waiver is plenary.  Epstein, 13 F.3d at 766.  The district court engaged in a two-part analysis on the question of whether Starlite was liable for Welfare Fund contributions.  First, the district court determined that only two current employees -- Luba Siemienuk and Mieczslaw Zielinski -- were also employed by Starlite during the period for which contributions were sought.  Agathos, No. 89-2429, slip op. at 2 (D.N.J. May 27, 1994).  Second, the district court determined that these two employees did not have medical claims to submit and "in any event, claims must be and were not submitted within one year from the date the claim was first incurred."  Id. at 2 n.2.

As we explained with respect to the Pension Fund, to the extent that the district court's opinion interprets our previous decision to summarily exclude past employees from consideration of whether these employees have "colorable claims," the district court erred.[12]  Thus, the essential issue that remains is whether all claims against the Welfare Fund for the period in question, by both past and present Starlite employees, are barred by a time limitation for filing.  The district court determined that the Trustees' purported waiver of the time for filing requirement was "an attempt to back door both this court and the Court of Appeals."  Id.  We disagree.

On December 2, 1992, the Trustees of the Local 4-69 Welfare Fund held a meeting and adopted a unanimous resolution to

_____

[12].  See supra part IV.

waive the time limits for submitting medical claims for those employees for whom contributions should have been made by Starlite. App. at 225a-27a. According to the minutes of that meeting, the purpose of the waiver was to:

> permit individuals for whom contributions should have been made under the collective bargaining agreement to submit medical bills to the Fund and to have the same paid in accordance with the then coverages of the Fund.

Id. at 226a. The Trustees assert that because the unreported employees were never made aware that they had coverage under the Welfare Fund, they could not have previously submitted claims for benefits and thus should be permitted to file claims now.

The district court did not analyze whether the Trustees were authorized to waive the time limitation, it merely concluded that such a "back door" tactic was inappropriate. After examining the Trust Agreement, we observe that Article V, § 17 vests in the Trustees the "full and exclusive authority to determine all questions of coverage and eligibility, methods of providing or arranging for benefits and all other related matters." App. at 114a. In addition, Article V, § 9(e) grants the Trustees the power to "do all acts, whether or not expressly authorized herein which the Trustees may deem necessary or proper for the protection of the property held hereunder." App. at 109a. Given such broad powers, and in light of the Trustees' reasonable position that unreported plan participants could not have submitted claims within the original claims period if they had never been notified that they were entitled to benefits, we

cannot agree that the Trustees have acted improperly in lifting the time bar.[13]  Accordingly, we will reverse the district court in its decision to give the time bar preclusive effect.

On remand, the district court should consider the fact that our previous decision placed the burden of proof on Starlite to prove whether or not employees have colorable claims for Welfare benefits.  Agathos, 977 F.2d at 1507-08.  Accordingly, the district court must make findings of fact with respect to all the past and present employees who worked during the period for which contribution is sought in order to ascertain whether Starlite has satisfied its burden of proving that particular employees do not have colorable claims against the Welfare Fund.[14]  If Starlite cannot satisfy its burden as to one or more employees, it must make contributions to the Welfare Fund on behalf of those employees.

---

[13].  Our position is also in accord with two of the fundamental assumptions underlying ERISA, i.e., that trustees of plans: (1) take steps to identify all participants and beneficiaries, so that the trustees can make them aware of their status and rights and (2) act to ensure that a plan receives all funds to which it is entitled.  See Central States, Southeast and Southwest Areas Pension Fund v. Central Transport Inc., 472 U.S. 559, 571-72, 105 S. Ct. 2833, 2841 (1985).

[14].  The Trustees assert that our previous opinion defined a colorable claim to welfare benefits to be a colorable claim to coverage during the relevant period.  We disagree.  We believe that a colorable claim against the Welfare Fund must be based on an actual illness or injury during the covered period.
With respect to Siemienuk and Zielinski, the district court stated that there are "no medical bills to submit," but ultimately rested its conclusion on the applicability of the time bar.  If the district court is satisfied that Starlite has met its burden of proof concerning these two present employees (without regard to the time bar) it should so indicate on remand.

CONCLUSION

In sum, because the district court correctly concluded that the Trustees failed to prove the essential elements of fraud or breach of contract, we will affirm that court's order denying the Welfare Fund recovery for benefits paid to Ms. Podkowa. Nevertheless, because the district court erred in not making findings concerning whether past employees have colorable claims against the Pension Fund, we will reverse the district court's order in part and remand for further proceedings. Further, because the district court confused a colorable claim with a vested claim for pension benefits, we will also reverse the district court's order denying the Pension Fund contribution for two current employees of Starlite and we will remand for further findings. Finally, because the district court erred in concluding that the Trustees could not waive the time requirement for filing claims against the Welfare Fund, we will also reverse on this issue and remand for further findings consistent with this opinion.